DYK, Circuit Judge.
 

 Appellant Robert E. Moody (“Moody”) appeals from the decision of the Court of Appeals for Veterans Claims affirming the Board of Veterans’ Appeals’ (“BVA”) denial of his claim for clear and unmistakable error (“CUE”) in a 1996 Department of Veterans’ Affairs (“VA”) regional office (“RO”) rating decision. Based on our recent decision in
 
 Szemraj v. Principi,
 
 357 F.3d 1370 (Fed.Cir.2004), we agree that the Court of Appeals for Veterans Claims in resolving this case misconstrued our decision in
 
 Roberson v. Principi,
 
 251 F.3d 1378 (Fed.Cir.2001). Since this error was not harmless, we vacate and remand.
 

 BACKGROUND
 

 The effective date of a total disability based upon individual unemployability (“TDIU”) award cannot be prior to the date that the first such formal or informal claim was made.
 
 See, e.g., Roberson,
 
 251 F.3d at 1384-85. Here the ultimate question is whether an informal claim for secondary service connection due
 
 *1308
 
 to a psychiatric disorder secondary to service connected prostatitis was made before June 24, 1994. The VA made June 24, 1994, the effective date of the appellant’s TDIU award because it determined that this was the first time Mr. Moody made either a formal or informal claim for secondary service connection. The VA regulation governing informal claims provides that:
 

 Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Department of Veterans Affairs, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim. Such informal claim must identify the benefit sought.
 

 38 C.F.R. § 3.155(a) (2003).
 

 Mr. Moody served in the United States Marine Corps from December 1965 to June 1966. He was diagnosed with chronic prostatitis in February of 1967. A 1968 RO rating decision established a service connection for Mr. Moody’s prostatitis rated at 0%. Mr. Moody’s other pre-1994 filings were not a model of clarity.
 

 On January 12, 1979, Mr. Moody filed a “claim for total disabilities benefits” related to non-service connected lower back trauma. (J.A. at 38.) Thereafter, a VA hospital summary, prepared on January 26, 1979, indicated that the veteran had complained of severe tension headaches and a nervous disorder. The summary also indicated that Mr. Moody had not worked since January 1977 and was receiving full Social Security disability benefits. The rating decision that followed (the “1979 decision”) acknowledged but did not further address Mr. Moody’s claim for “total disability.” (J.A. at 43.) Instead, the 1979 decision gave Mr. Moody a 30% non-service connected rating for his tension headaches and continued his 0% service connected prostatitis rating.
 

 Mr. Moody filed another claim in 1981 seeking to reevaluate the severity of his service connected prostatitis and establish a service connection for his tension headaches. The RO denied both of Mr. Moody’s claims. Following a notice of disagreement, Mr. Moody filed a statement in support of his claim in May of 1982 (the “May 1982 statement”). In the statement Mr. Moody explained that his doctor at the VA medical center had told him “that [his] service-connected prostatitis/condition [wa]s secondary to [his] nervous condition, and that [his] headaches [were] from the same source.” (J.A. at 53.) A letter from Dr. Lawrence Salvesen who treated Mr. Moody from 1977-1981 was also included with the statement. The letter indicated that Dr. Salvesen had treated Mr. Moody for “anxiety and depression secondary to severe back pain.” (J.A. at 55.)
 

 In November of 1982, Mr. Moody filed a VA Form 21-526 application (the “1982 application”) for disability compensation or pension. Form 21-526 is a generic form used by veterans, whether applying for disability compensation or non-service connected pension. Mr. Moody circled the word “pension” at the top of the 1982 application. However, in the “nature of sickness” section of the 1982 application, Mr. Moody stated that, along with other ailments, he suffered from stress/tension headaches, chronic prostatitis and a nervous condition. (J.A. at 63-65.) He went on to state that his headaches and nervous condition originated in 1966 at the same time as his service-connected prostatitis. The 1982 application further indicated that Mr. Moody was unemployed due to these disabilities. A letter from Mr. Moody’s doctor, filed in support of the 1982 application, acknowledged his service connection
 
 *1309
 
 for prostatitis and stated that “benefits would be definitely warranted given [Mr. Moody’s] physical and psychological condition .... ” (J.A. at 69.)
 

 In a rating decision issued in December of 1982 (the “1982 decision”), the RO rated Mr. Moody’s headaches at 30% non-service connected; rated his depressive disorder at 50% non-service connected; and granted his claim for non-service connected pension. (J.A. at 71-72.) The RO continued the 0% service connected rating for prostatitis, but it did not address whether a service connection existed for Mr. Moody’s nervous disorder.
 

 Mr. Moody continued to make claims related to his prostatitis and nervous condition in the years following the 1982 decision. His service connected prostatitis rating was increased to 20% in 1986 and again to 30% in 1995. On June 24, 1994, Mr. Moody filed a statement in support of one of his claims (the “1994 statement”) in which he made “a claim for depression secondary to my [service connected] prostatitis.” (J.A. at 119.) That claim was initially denied in a 1995 rating decision. Finally in May of 1996 the RO granted a 70% secondary service connection for Mr. Moody’s nervous condition and a combined service connected rating of 80%, effective June 24, 1994. He was also granted TDIU, increasing his rating to 100%, effective June 24, 1994. According to the RO, the effective date was the “date of claim,”
 
 i.e.,
 
 the first time Mr. Moody claimed that his psychiatric disorder was secondary to his service connected prostatitis. (J.A. at 186.) The RO determined that this date was June 24, 1994.
 

 In 1998 Mr. Moody filed a CUE claim arguing that he was entitled to an earlier effective date for his TDIU rating. Mr. Moody argued that it was CUE for the RO in its 1996 decision to find that no claim for secondary service connection for his psychiatric disorder had been made before June 24, 1994. He urged that his prior benefit claims, combined with the evidence in the record at that time, were sufficient to raise an informal claim for secondary service connection.
 

 In April of 2000 the BVA rejected Mr. Moody’s CUE claim because after construing the veteran’s filings prior to 1994 it determined that there “was no undebata-ble error ... which ... would have manifestly changed the outcome at the time it was made.”
 
 In re Moody,
 
 No. 98-13 834A, slip op. at 8 (Apr. 24, 2000). In doing so the BVA rigorously applied section 3.155(a). For instance, the BVA held that the May 1982 statement did not constitute a claim for secondary service connection because “the veteran said that a doctor had told him that prostatitis was secondary to a nervous condition, not the other way around.”
 
 Id.
 
 at 6 (internal quotation omitted). The BVA further noted that the 1982 application “did not list a psychiatric disorder claimed to be related to prostatitis as a disease for which a claim was being made.”
 
 Id.
 
 at 6-7. Likewise, the 1982 application was held insufficient to raise an informal claim for service connection because the word “pension” was circled at the top.
 
 Id.
 

 Mr. Moody appealed the BVA’s rejection of his CUE claim to the Court of Appeals for Veterans Claims. While Mr. Moody’s appeal was pending, we issued our decision in
 
 Roberson
 
 and in supplemental briefing Mr. Moody argued that remand was required to determine if an earlier claim for secondary service connection had been raised under the standard set out in
 
 Roberson.
 
 In January of 2003 the Court of Appeals for Veterans Claims rejected this argument and affirmed the BVA’s decision denying the CUE claim.
 
 Moody v. Principi,
 
 No. 00-1557, slip op. at 3, 2003 WL
 
 *1310
 
 115470 (Vet.App. Jan. 7, 2003). Mr. Moody timely filed an appeal to this court.
 

 DISCUSSION
 

 The government claims that we lack jurisdiction in this case. However, as we recently held in
 
 Szemraj,
 
 we have jurisdiction under 38 U.S.C. § 7292 to determine whether the Court of Appeals for Veterans Claims misinterpreted our rulings in earlier decisions on an issue of law.
 
 See
 
 slip op. at 9-10. We review a claim for legal error in the decision of the Court of Appeals for Veterans Claims without deference.
 
 Meeks v. West,
 
 216 F.3d 1363, 1366 (Fed.Cir.2000). However, absent a constitutional issue, we are without jurisdiction to review a factual determination or an application of law to the particular facts in an appeal from the Court of Appeals for Veterans Claims.
 
 Lennox v. Principi,
 
 353 F.3d 941, 946 (Fed.Cir.2003);
 
 see
 
 38 U.S.C. § 7292(d)(2) (2000).
 

 The appellant argues that the Court of Appeals for Veterans Claims erred in construing our decision in
 
 Roberson.
 
 In
 
 Roberson
 
 we held that the VA has a duty to “fully and sympathetically develop a veteran’s claim to its optimum,” 251 F.3d at 1384 (quoting
 
 Hodge v. West,
 
 155 F.3d 1356, 1362 (Fed.Cir.1998)), and that this requires the VA to “determine all potential claims raised by the evidence, applying all relevant laws and regulations.”
 
 Id.
 
 The Court of Appeals for Veterans Claims held that
 
 Roberson
 
 did not apply here because it “identified a narrow factual scenario which sufficiently raises an informal claim for TDIU within the meaning of 38 C.F.R. § 3.155(a)” and “there is no indication that the facts of this case coincide with those of
 
 Roberson.” Moody,
 
 slip op. at 3-4. However, this distinction disregards the broader holding of
 
 Roberson.
 
 As we recently confirmed in
 
 Szemraj, “Roberson
 
 requires ... that the VA give a sympathetic reading to the veteran’s filings by ‘deter-min[ing] all potential claims raised by the evidence, applying all relevant laws and regulations.’” 357 F.3d at 1373 (quoting
 
 Roberson,
 
 251 F.3d at 1384) (alteration in original). This duty applies ‘‘‘with respect to all pro se pleadings” before the VA.
 
 Id.
 

 Thus the veteran is not required to show, as the Court of Appeals for Veterans Claims suggested, that the “evidence
 
 undebatably
 
 established that an informal claim for secondary service connection was filed prior to 1994,”
 
 Moody,
 
 slip op. at 3 (emphasis added). So too, contrary to the government’s argument, “ambiguity,”
 
 see
 
 Br. for Respondent-Appellee at 21, in Mr. Moody’s earlier pleadings should be resolved in favor of the veteran. The standard applied by the Court of Appeals for Veterans Claims was legally erroneous.
 

 Here the legal error committed by the Court of Appeals for Veterans Claims is not harmless. Unlike
 
 Szemraj,
 
 this is not a case where
 
 Roberson
 
 has no application. The question is whether the BVA, as required by
 
 Roberson,
 
 sympathetically read Mr. Moody’s filings prior to June 24, 1994, in determining whether Mr. Moody made an informal claim for secondary service connection for his psychiatric disorder. The interpretation
 
 of
 
 these prior filings is essentially a factual inquiry, and it is beyond our jurisdiction to make that determination.
 
 See Lennox,
 
 353 F.3d at 946;
 
 Cook v. Principi,
 
 353 F.3d 937, 939 (Fed.Cir.2003).
 

 The decision of the Court of Appeals for Veterans Claims is vacated, and the case is remanded for decision under the correct legal standard.
 

 Vacated and Remanded
 

 COSTS
 

 No costs.