# United States Court of Appeals for the Federal Circuit

2005-7190

ELIZABETH H. BONNER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Mark Healy Bonner, of Great Falls, Virginia, argued for claimant-appellant.

Leslie Cayer Ohta, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Bryant G. Snee, Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Jamie L. Mueller, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

# United States Court of Appeals for the Federal Circuit

2005-7190

ELIZABETH H. BONNER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  August 16, 2007

_____

Before NEWMAN, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge ARCHER.  Dissenting opinion filed by Circuit Judge NEWMAN.

ARCHER, Senior Circuit Judge.

Elizabeth Bonner ("Mrs. Bonner") appeals the United States Court of Appeals for Veterans Claims' ("Veterans Court") affirmance of the Board of Veterans' Appeals' ("Board") determination that she was not entitled to an effective date earlier than November 1, 1994, for dependency and indemnity compensation ("DIC").  Bonner v. Nicholson, No. 02-0742 (Vet. App. June 17, 2005).  Because we conclude that the Veterans Court neither misinterpreted Moody v. Principi, 360 F.3d 1306 (Fed. Cir. 2004), nor committed harmful error, we affirm the Veterans Court's judgment.

Rear Admiral Emmett P. Bonner ("Admiral Bonner") died on August 1, 1975, following a distinguished career in the United States Navy. Shortly thereafter, his wife, Elizabeth Bonner, filed a claim for DIC with the Veterans Administration Regional Office ("RO") listing "cancer" as the cause of Admiral Bonner's death. The supporting evidence filed with this claim included an autopsy report from the National Naval Medical Center ("NNMC") listing Hodgkin's disease as cause of death and a death certificate listing Hodgkin's disease as the "immediate cause" of death. The RO determined the cause of death as Hodgkin's disease, a form of cancer, which had been diagnosed during Admiral Bonner's hospitalization from January to April 1975. The RO denied the claim for DIC because there was no evidence of service connection. The decision was not appealed and, therefore, became final.

Thereafter, 38 C.F.R. § 3.313 was issued in 1990 to address service connection for injuries caused by exposure to herbicides during military service in Vietnam. It provided, in pertinent part, that "[s]ervice in Vietnam during the Vietnam Era together with the development of non-Hodgkin's lymphoma ["NHL"] manifested subsequent to such service is sufficient to establish service connection for that disease." 38 C.F.R. § 3.313(b) (1990). This regulation was made retroactive to August 5, 1964. 55 Fed. Reg. 43,123 (Oct. 26, 1990).

The following year the Agent Orange Act of 1991 was enacted. This Act directed the Secretary, in certain circumstances, to establish presumptions of service connection for other diseases found to be associated with herbicide exposure while serving in the military. 38 U.S.C § 1116. Any presumption afforded by this statute was to be effective

only prospectively from the date the final regulations were issued. 38 U.S.C. § 1116(c)(2). In 1994, pursuant to the Agent Orange Act, the VA added Hodgkin's disease to the list of diseases presumptively associated with exposure to herbicides in Vietnam. 59 Fed. Reg. 5106 (Feb. 3, 1994) (in relevant part amending 38 C.F.R. § 3.309 and 38 C.F.R. § 3.307).

In 1995, pursuant to a claim by Mrs. Bonner under the Radiation Exposure Compensation Act, Pub. L. No. 98-542, 98 Stat. 2725, tissue samples from Admiral Bonner were examined by the National Institutes of Health ("NIH"). The findings of this examination reported that "immunohistochemical studies favor the diagnosis of non-Hodgkin's lymphoma."[1] Based on this conclusion and, presumably, the above regulations promulgated in the 1990s, Mrs. Bonner submitted a letter to the VA stating that Admiral Bonner's death was likely related to NHL; that Admiral Bonner had been exposed to radiation during his military service; and that she was, therefore, entitled to DIC effective as of the date of her 1975 claim.

The RO treated this letter as a request to reopen Mrs. Bonner's previously denied claim on the basis of new and material evidence under 38 U.S.C. § 5108 (2000). The RO awarded Mrs. Bonner DIC effective November 1, 1995, the date of receipt by the VA of her letter, based on the non-appealed finding that Hodgkin's disease caused Admiral Bonner's death but applying the presumption of service connection for such

---

[1] Contrary to the dissent's assertion, the 1995 NIH report reexamining Admiral Bonner's condition at the time of his death was ambiguous in that his illness "simulat[ed] Hodgkin's Disease" but also "favor[ed] a diagnosis of non-Hodgkin's lymphoma." This does not demonstrate that the 1975 diagnosis of Hodgkin's Disease as the cause of death was indisputably incorrect. After a detailed review of the 1995 NIH report, the RO concluded that the evidence was also consistent with Hodgkin's Disease. Regardless, as explained below, the cause of Admiral Bonner's death was not relevant to the decision of the Veterans Court.

disease under the Agent Orange Act. Mrs. Bonner filed a Notice of Disagreement contending that because she filed a claim for service connection for the cause of Admiral Bonner's death shortly after his death, the effective date for DIC should be the date on which he died, August 1, 1975. The RO subsequently issued a statement of the case which granted an earlier effective date for DIC benefits of November 1, 1994, one year prior to the November 1, 1995 application to reopen the claim. This award was based upon the regulation that provides that if a claim is reviewed more than one year after the effective date of a change in the law, as was the case here, benefits may be authorized for a period of one year prior to the date of receipt of such request. See 38 C.F.R. § 3.114(a)(3).

Following several more exchanges between Mrs. Bonner and the VA, in August 1999, the RO issued a supplemental statement of the case noting Mrs. Bonner's assertion that NHL was the cause of Admiral Bonner's death. This supplemental statement of the case clarified the bases for the RO's determination that the cause of Admiral Bonner's death was Hodgkin's disease. Specifically, the RO stated that the 1995 NIH biopsy and medical records did not provide a definitive diagnosis of NHL. The RO noted that the presence of Reed-Sternberg cells and variants found in the 1995 biopsy was consistent with a diagnosis of Hodgkin's disease. The RO also indicated that the final diagnosis in the 1995 report of "malignant lymphoma, large cell, immunoblastic type, with necrosis involving the lymph nodes [and] liver," was similarly consistent with Hodgkin's lymphoma.

Mrs. Bonner appealed this decision to the Board. The Board first noted that in order for Mrs. Bonner to receive benefits under 38 C.F.R. § 3.313(a), the denial of her

1975 claim had to have been a denial of a claim for service connection for NHL, not a denial of service connection for another disease. Based on this conclusion, the Board opined that it did not need to reach the issue of whether an effective date for an award of DIC based on Mrs. Bonner's 1975 claim would have been warranted if the RO had awarded DIC in 1995 based on a cause of death from NHL, as opposed to Hodgkin's disease. This was "because the denial of [Mrs. Bonner's] original claim in 1976 was a denial based on [a claim for] cause of death from Hodgkin's disease, not NHL." In other words, Mrs. Bonner was ineligible for retroactive benefits under § 3.313 because her 1975 claim was for Hodgkin's disease and not NHL.[2] Having made this determination, the Board explained that for the reasons posited by the RO, the earliest effective date Mrs. Bonner could receive was November 1, 1994.

Mrs. Bonner appealed the Board's decision to the Veterans Court. Affirming the Board's action, the Veterans Court concluded that "the evidence established that Mrs. Bonner's [1975] claim was one for Hodgkin's disease as the cause of her husband's death, and, therefore, we cannot conclude that the evidence reasonably raised any claims for the cause of death by types of cancer other than Hodgkin's disease." Bonner, 19 Vet. App. at 19-20. The Veterans Court also noted that the Board did not disturb the RO's finding that the evidence of record revealed Hodgkin's disease as the cause of Admiral Bonner's death and therefore the cause-of-death finding remained

---

[2] Under VAOPGCPREC 5-94 (a VA General Counsel Precedential Opinion) benefits under § 3.313 are awarded retroactive to "the date . . . of an original claim for that [NHL] benefit . . . if the claimant was otherwise eligible on the date of claim." (emphasis added). Thus, in order to receive benefits under § 3.313, the original claim must have been one for NHL.

Hodgkin's disease. The Veteran's Court then concluded that "the Board had a plausible basis to find that the cause of Mr. Bonner's death was Hodgkin's disease." Id. at 21.

Mrs. Bonner challenges the Veterans Court's determinations. We have jurisdiction pursuant to 38 U.S.C. § 7292.

## II.

## A.

We have limited jurisdiction to review a decision of the Veterans Court. We may review the validity of "a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the [Veterans Court] in making the decision." 38 U.S.C. § 7292(a) (2000). Included within this review is whether the Veterans Court exceeded its jurisdiction, Wanner v. Principi, 370 F.3d 1124, 1128 (Fed. Cir. 2004) (explaining that the "Veterans Court's compliance with its jurisdictional statute is a question of law, reviewed de novo" by this court), and whether the Veterans Court "misinterpreted our rulings in earlier decisions on an issue of law," Moody v. Principi, 360 F.3d 1306, 1310 (Fed. Cir. 2004). We review de novo a claim that the Veterans Court committed legal error. Id. However, absent a constitutional issue, we lack jurisdiction to review factual findings of the Veterans Court or that court's application of law to fact. Id.

## B.

Mrs. Bonner alleges two errors in the Veterans Court's decision. First, Mrs. Bonner asserts the Veterans Court misconstrued our decision in Moody v. Principi ("Moody") when it did not read her 1975 claim for "cancer" as encompassing a claim for NHL. This position is grounded in the assertion that the clinical findings contained in the

1975 autopsy report also supported a determination that Admiral Bonner's death was caused by NHL. Second, Mrs. Bonner contends the Veterans Court exceeded its jurisdiction when it decided a factual issue, the cause of Admiral Bonner's death, that the Board did not reach in the first instance. Mrs. Bonner concedes that in order for her "to prevail ultimately in receiving DIC as of the date of her original claim, she will have to establish that her husband died of non-Hodgkin's lymphoma, and that her original claim was broad enough to encompass non-Hodgkin's lymphoma."

The government argues that we lack jurisdiction to review the factual determination that Hodgkin's disease was the cause of Admiral Bonner's death. It further argues that the Veterans Court correctly concluded that the Board did not err in holding that Mrs. Bonner was not entitled to a 1975 effective date for DIC benefits. Additionally, the government contends that Mrs. Bonner failed to demonstrate how the VA erred in developing her 1975 claim and that even if Mrs. Bonner were able to show that she had reasonably raised a claim for NHL in 1975 that has not yet been adjudicated, such an error is to be corrected through a motion asserting the VA had committed clear and unmistakable error ("CUE"). [3]

## C.

In <u>Moody</u>, we reiterated that "with respect to all pro se pleadings," <u>id.</u> at 1310, the VA must give a sympathetic reading to the veteran's filings by "'determin[ing] all potential claims raised by the evidence, applying all relevant laws and regulations,'" <u>id.</u> (quoting <u>Roberson v. Principi</u>, 251 F.3d 1368, 1373 (Fed. Cir. 2001)). We can find no

---

[3] The only way the RO's unappealed 1976 decision can be collaterally attacked is through a claim of "clear and unmistakable error" ("CUE"). At oral argument, Mrs. Bonner conceded that a CUE claim was not at issue in this case. Therefore, the issue of the validity of the 1976 decision is not before us.

indication that the Veterans Court misinterpreted this mandate. In fact, the Veterans Court expressly recited the legal standard quoted above. Bonner, 19 Vet. App. at 18. The Veterans Court examined the evidence of record and concluded:

> At the time of the 1976 RO adjudication, the evidence established that Mrs. Bonner's claim was one for Hodgkin's disease as the cause of her husband's death, and, therefore, we cannot conclude that the evidence reasonably raised any claims for the cause of death by types of cancer other than Hodgkin's disease. Compare Moody, Szemraj, Roberson.

Id. at 19-20.

Mrs. Bonner does not explain how the Veterans Court purportedly misinterpreted Moody. In Moody we rejected the Veterans Court's suggestion that in order for pleadings to be read as containing a potential claim there must have been "evidence undebatably establish[ing]" the existence of such a claim. Moody, 360 F.3d at 1310. Mrs. Bonner does not argue that the Veterans Court required her to make a more stringent showing than that required by Moody. Nor does she contend that the Veterans Court improperly determined that the mandate of Moody did not apply here. In essence, Mrs. Bonner takes issue with the Veterans Court's application of Moody. That is, she disagrees with the Veterans Court's conclusion that a claim for NHL was not supported by the evidence before the RO in 1976. However, the interpretation of the 1975 claim "is essentially a factual inquiry, and it is beyond our jurisdiction to make

that determination." Moody, 360 F.3d at 1310.[4]

Mrs. Bonner also contends that the Veterans Court exceeded its jurisdiction when it decided a factual issue—the cause of Admiral Bonner's death—that the Board did not reach. Under 38 U.S.C. § 7261(a), the Veterans Court's jurisdiction is limited to deciding issues that are "necessary to its decision and presented" to it. 38 U.S.C. § 7261(a)(4) (2000) (stating "[i]n any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall . . . in the case of a finding of material fact adverse to the claimant made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside or reverse such finding if the finding is clearly erroneous"). The Board determined that Mrs. Bonner was not entitled to DIC prior to November 1, 1994, regardless of whether Admiral Bonner's death was caused by Hodgkin's disease or NHL.

The Veterans Court did not decide or rely on the cause of Admiral Bonner's death in affirming the Board's decision. Rather, it relied on the characterization of Mrs. Bonner's 1975 claim, evidenced by the supporting documentation, as one for death caused by Hodgkin's disease. The Veterans Court merely concluded that this information provided a plausible basis for the RO's determination that Hodgkin's

---

[4] We note that when the VA fails to construe the veteran's pleadings to raise a claim, such an error is properly corrected through a CUE motion. See Bingham v. Nicholson, 421 F.3d 1346, 1349 (Fed. Cir. 2005) (explaining that the VA's failure to consider all aspects of a claim is properly challenged through a CUE motion); Andrews v. Nicholson, 421 F.3d 1278, 1284 (Fed. Cir. 2005) (stating "when the VA violates Roberson by failing to construe the veteran's pleadings to raise a claim, such claim is not considered unadjudicated but the error is instead properly corrected through a CUE motion"). CUE is not simply a "buzz word" as stated by the dissent. It is a statutorily created avenue for challenging a VA decision. See 38 U.S.C. § 5109A.

disease was the cause of death. Furthermore, even if we were to conclude that the Veterans Court exceeded its jurisdiction by deciding a factual issue not "necessary" to its decision, any such error would be harmless, as the grounds for the Veterans Court's decision would remain in place. Accordingly, we need not decide if the Veterans Court exceeded its jurisdiction in this instance.

III

The judgment of the Veterans Court is therefore

AFFIRMED.

# United States Court of Appeals for the Federal Circuit

2005-7190

ELIZABETH H. BONNER,

Claimant-Appellant,

v.

R. JAMES NICHOLSON,
Secretary of Veterans Affairs,

Respondent-Appellee.

NEWMAN, <u>Circuit Judge</u>, dissenting.

The Department of Veterans Affairs relied on a plainly incorrect autopsy diagnosis to deny Mrs. Bonner the Dependency and Indemnity Compensation benefits to which she is entitled. From the panel majority's denial of these benefits and refusal to correct the concededly incorrect cause of death, I respectfully dissent.

Admiral Emmett Peyton Bonner was a Naval officer who graduated from the United States Naval Academy in 1939. His naval career included service in World War II, Korea, and Vietnam. While in the service he was exposed to radiation during atmospheric nuclear testing in the South Pacific in 1958, and may have been exposed to Agent Orange in Vietnam. He retired at the age of 54 and died of cancer three years later.

Admiral Bonner's wife, the appellant, applied for Dependency and Indemnity Compensation, listing the cause of death as "cancer." An autopsy performed at the time of death by the National Naval Medical Center (NNMC) listed the cause of death as Hodgkin's Disease. Mrs. Bonner's claim was initially denied as not being service connected, since neither Hodgkin's Disease nor other forms of lymphoma (Non-Hodgkin's Lymphoma or NHL) were presumptively service connected.

The National Institutes of Health subsequently reviewed the autopsy report and a group of slides that the government had preserved. The conclusion was that the original diagnosis of Hodgkin's Disease was incorrect, and that Admiral Bonner died of Non-Hodgkin's Lymphoma. It is not disputed that the second diagnosis is the correct one.

The panel majority, while asserting that the cause of death is a factual matter not open to our review, speculates about the meaning and accuracy of the two autopsy reports. Thus the court proposes that the 1975 diagnosis of Hodgkin's Disease as the cause of death may have been correct. The majority's preference for the 1975 diagnosis of Hodgkin's Disease is contrary to NIH's undisputed conclusion that the autopsy "favors" non-Hodgkin's lymphoma, and that the earlier diagnosis was incorrect. For example, the 1995 NIH report states that "although the infiltrate contains cells which resemble Reed-Sternberg cells and variants, the infiltrate lacks the usual inflammatory background of Hodgkin's disease. Immunohistochemical studies favor the diagnosis of non-Hodgkin's lymphoma." Reed-Sternberg cells, and the "usual inflammatory background" found to be absent, are mandatory elements of Hodgkin's disease. See Ramzi S. Cotran, et al. Robbins Pathologic Basis of Disease 5th ed. 2001, App. at 96-116. The NIH report concludes with the following paragraphs:

2005-7190                                        2

The patient was a 57 year old white male diagnosed as lymphocyte-depleted Hodgkin's disease in January 1975 and treated with combined chemotherapy and radiation, who died 8/1/75. At autopsy he was found to have extensive nodal and hepatic involvement by lymphoma, initially interpreted as consistent with Hodgkin's disease. The major pathological question addressed to us was whether, in light of current concepts, the tumor would be reclassified as a non-Hodgkin's lymphoma.

Microscopic examination of the lymph nodes and liver nodules show massive involvement by malignant lymphoid cells. The malignant cells are large, pleomorphic cells, with prominent nucleoli, some of which resemble Reed-Sternberg cells and variants. However, the background infiltrate is sparse and composed of small, mature lymphocytes. It lacks the normal mixed inflammatory background of Hodgkin's disease as well. The malignant cells are histologically identical in appearance to those seen in the biopsies of the abdominal mass (dated 2/6/75) and axillary lymph node (dated 4/3/75). Immunoperoxidase stains were performed on paraffin sections of the submitted surgical material and favor the diagnosis of non-Hodgkin's lymphoma. (See attached surgical pathology, report NIH #S95-5688)

T-cell rich B-cell lymphomas simulating Hodgkin's disease have been well described, and represent a 4-5% misdiagnosis of Hodgkin's disease. Indeed, a review of originally classified lymphocyte-depleted Hodgkin's disease cases at the National Cancer Institute revealed 26% with a high-grade non-Hodgkin's lymphoma, the majority of those cases were further classified as diffuse, large cell, immunoblastic type lymphomas.

The NIH report concluded that Admiral Bonner died of non-Hodgkin's lymphoma, and the Board of Veterans Appeals agreed. See Appeal of Elizabeth Bonner, No. 96-35144 (BVA Sept. 27, 2001) at 3 (setting forth the finding of fact that "the RO received evidence from the National Institutes of Health (NIH) indicating that the diagnosis of Hodgkin's disease made in the veteran's case in 1975 was in error and that the veteran had actually died of non-Hodgkin's lymphoma (NHL).") No contradiction to that finding is mentioned by the Board, or by the Veterans Court.

My concern is not that the Regional Office initially arrived at an incorrect cause of death based on an incorrect autopsy report. My concern is that the Board refused to

change its ruling despite accepting the new and unchallenged information in the NIH autopsy report, leaving the plainly incorrect diagnosis unrepealed and thereby denying the widow her entitlement.

Nonetheless, the DVA has refused to correct the error in Admiral Bonner's records, thereby reducing the statutory benefits available to Mrs. Bonner. By statutory enactment after the Viet Nam war, Congress established the presumption that deaths from both Hodgkin's Disease and Non-Hodgkin's Lymphoma are service connected, but placed different retroactive effects on these determinations. Thus a veteran who died of Non-Hodgkin's Lymphoma entitles his widow to compensation retroactive to 1964; that is, the claim benefits from the presumption of service connection, even if the claim had been denied before the statutory and regulatory provisions were enacted. However, compensation for Hodgkin's Disease is awarded only for the period after the law was enacted and only for a year before the claim is filed. (The difference appears to relate to Agent Orange exposure in Viet Nam). Thus, whether Admiral Bonner died of Hodgkin's Disease or Non-Hodgkin's Lymphoma determines whether Mrs. Bonner receives compensation from 1994 or from 1975.

Mrs. Bonner filed another request for compensation in 1995, requesting compensation from the filing of her original claim in 1975. The VA, applying the rules for Hodgkin's Disease based on the original autopsy, awarded compensation from 1994. The Regional Office refused to change the diagnosis despite the corrected autopsy report. The Board of Veterans Appeals remarked that the two autopsies reached different conclusions, but held that since the claim as originally filed was for Hodgkin's Disease, Mrs. Bonner could not receive the retroactive benefit of the Non-Hodgkin's statute and regulations. On

2005-7190                                          4

appeal, the Court of Appeals for Veterans Claims ruled that the cause of death was Hodgkin's Disease since the Regional Office had made that determination and the BVA had not disturbed it.

The claim as initially filed by Mrs. Bonner named "cancer" as the cause of death. It is not disputed that both Hodgkin's Disease and Non-Hodgkin's Lymphoma are forms of cancer. However, the Veterans Court affirmed the BVA ruling that the initial claim for "cancer" was really a claim based on Hodgkin's Disease because the evidence initially presented to the Regional Office stated that diagnosis. The Veterans Court refused to consider the second autopsy report.

Neither Mrs. Bonner nor the VA can be charged with prior knowledge that the original autopsy report was incorrect. The proper procedure is to correct the veteran's records in accordance with the correct autopsy report. It is not an unreviewable factual question of whether the VA is required to recognize an undisputed error in the veteran's records, and to apply the correct cause of death to survivors' claims. Upon such recognition, Mrs. Bonner's claim would be subject to determination on the correct grounds, whether or not she used the buzz-words "clear and unmistakable error (CUE)" in her petition (as the government argues). The obligatory veteran-friendly position of the law governing veterans' claims negates this hyper-technical reason whereby the Veterans Court refused to consider the merits of Mrs. Bonner's claim. From my colleagues' acceptance of this reasoning, I respectfully dissent.