# United States Court of Appeals for the Federal Circuit

2008-7013

LEROY COMER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Edward R. Reines, Weil, Gotshal & Manges LLP, of Redwood Shores, California, argued for claimant-appellant. With him on the brief was Dion D. Messer, of Austin, Texas.

Martin F. Hockey, Jr., Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC argued for respondent-appellee. With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, Todd M. Hughes, Jr., Deputy Director, and David F. D'Alessandris, Attorney. Of counsel on the brief were Michael J. Timininski, Deputy Assistant General Counsel, and Y. Ken Lee, Attorney, Office of the General Counsel, Department of Veterans Affairs, of Washington, DC.

Appeal from: United States Court of Appeals for Veterans Claims

Judge Robert N. Davis

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2008-7013

LEROY COMER,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-1462, Judge Robert N. Davis.

_____

DECIDED:   January 16, 2009
_____

Before MAYER, LOURIE, and GAJARSA, Circuit Judges.

MAYER, Circuit Judge.

Leroy Comer appeals the judgment of the United States Court of Appeals for Veterans Claims which held that he had not properly raised the issue of whether he was entitled to an earlier effective date for total disability based on individual unemployability ("TDIU") benefits.  See Comer v. Nicholoson, No. 05-1462, 2007 U.S. App. Vet. Claims LEXIS 1083 (Vet. App. July 6, 2007) ("2007 Veterans Court Decision").  Because we conclude that the court misinterpreted Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001), when it held that the duty to sympathetically and fully construe a pro se veteran's

filings did not apply to an appeal submitted to the Board of Veterans' Appeals following a rating determination, we reverse and remand.

## BACKGROUND

From 1967 to 1970, Comer served on active duty in the United States Army. From 1968 to 1969, he served in Vietnam, where his duties included guarding an ammunition depot that was, he asserts, "under mortar attack almost every night."

On December 29, 1988, Comer, acting pro se, filed a claim for disability benefits with the Waco, Texas, Regional Office ("RO") of the Department of Veterans Affairs ("VA"). He claimed entitlement to service connection for post-traumatic stress disorder ("PTSD"), asserting that he suffered from nightmares, depression and headaches. Although he was rated as 30 percent disabled due to PTSD, the RO declined to award him disability benefits, concluding that the evidence did not establish that his PTSD was connected to his Vietnam service.

On February 26, 1999, Comer asked that his original claim for service connection for PTSD be reopened. His request to reopen was denied by the RO, but on appeal the board reversed after determining that new evidence had been submitted that was "so significant that it must be considered in order to fairly decide the merits of the claim." In re Comer, No. 00-23550, slip op. at 4 (B.V.A. Aug. 16, 2001) ("2001 Board Decision"). In remanding the reopened claim to the RO, the board noted that Comer had been diagnosed with PTSD and that "it generally appears that the diagnosis of PTSD is related to service." Id. at 5.

On remand, the RO granted Comer service connection for his previously rated 30 percent PTSD disability. The disability rating was effective as of February 26, 1999, the

date he filed the motion to reopen his claim. In March 2003, Comer submitted a notice of disagreement, requesting that he be assigned a disability rating higher than 30 percent and that his benefits be made retroactive to his original 1988 PTSD claim. In response, the RO increased the disability rating to 50 percent, but did not change the effective date for his benefits.

In June 2003, Comer filed an appeal with the board. He sought benefits retroactive to his original 1988 PTSD claim and an increased disability rating. He filed pro se, although a representative from the Disabled American Veterans ("DAV") organization submitted a statement on his behalf.

While his appeal was pending, the VA, on May 5, 2004, gave Comer a classification and pension ("C&P") exam. The examining physician diagnosed him with PTSD and noted that, since his last C&P exam, he had had "no stable job." The physician further observed that Comer reported having "nightmares and flashbacks about the war once weekly" and that these nightmares increased when he was under stress. Following the C&P exam, the RO assigned Comer an increased disability rating of 70 percent and, based on his demonstrated employment problems, granted him TDIU benefits. Both the 70 percent disability rating and the TDIU award were effective as of May 5, 2004, the date of the C&P exam.

Subsequently, on February 16, 2005, the board denied Comer's request for an increased rating for the period from February 26, 1999, to May 5, 2004. It also denied his request for disability benefits prior to 1999. The board stated that it could not award benefits retroactive to Comer's initial claim for benefits because he had "not specifically

alleged clear and unmistakable error" in the earlier rating decision.  In re Comer, No. 03-17742, slip op. at 23 (B.V.A. Feb. 16, 2005) ("2005 Board Decision").

Comer, now represented by counsel, appealed to the Veterans Court.  The court held that it had no jurisdiction to consider the issue of whether Comer should have been granted TDIU benefits prior to May 5, 2004, because he had not specifically raised that issue in his notice of disagreement with the board decision.  See 2007 Veterans Court Decision, slip op. at 4.  The court also rejected his argument that the VA had failed to comply with its notice obligations under 38 U.S.C. § 5103(a), concluding that the VA had provided Comer with notice of "what evidence [the] VA [was] responsible for obtaining and what [Comer] could do to assist in the process."  2007 Veterans Court Decision, slip op. at 6 (citations and internal quotation marks omitted).

Comer timely appealed both issues to this court.  We have jurisdiction pursuant to 38 U.S.C. § 7292.

DISCUSSION

This court has authority to review decisions of the Veterans Court regarding the "validity of any statute or regulation or any interpretation thereof" and to "interpret constitutional and statutory provisions, to the extent presented and necessary to a decision."  38 U.S.C. § 7292(c); Flores v. Nicholson, 476 F.3d 1379, 1381 (Fed. Cir. 2007).  We review the interpretation of statutory provisions without deference.  Stanley v. Principi, 283 F.3d 1350, 1354 (Fed. Cir. 2002); Howard v. Gober, 220 F.3d 1341, 1343 (Fed. Cir. 2000).  "In cases where the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of a veteran's claim, we treat the application of law to undisputed fact as a question of law."  Conley v.

<u>Peake</u>, 543 F.3d 1301, 1304 (Fed. Cir. 2008); <u>see</u> <u>Groves v. Peake</u>, 524 F.3d 1306, 1310 (Fed. Cir. 2008).

I.

Comer first argues that the Veterans Court misconstrued <u>Roberson</u>, 251 F.3d at 1380-84, when it held that it had no jurisdiction to consider the issue of whether he was entitled to an earlier effective date for TDIU benefits because he had not explicitly raised that issue before the board. In his view, <u>Roberson</u> requires the board to consider whether a TDIU award is warranted whenever a pro se claimant seeks a higher disability rating and submits cogent evidence of unemployability, regardless of whether he states specifically that he is seeking TDIU benefits. We agree.

In <u>Roberson</u>, a veteran, who had had significant employment difficulties, filed a pro se claim seeking disability benefits, but did not specify that he was seeking a TDIU award. 251 F.3d at 1380. The RO awarded him a 70 percent disability rating for PTSD, but did not consider whether he also might be entitled to a TDIU award, which would entitle him to a 100 percent disability rating. <u>See</u> 38 C.F.R. § 4.16 ("Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."). Roberson later sought to reopen his claim, asserting that the RO decision contained clear and unmistakable error ("CUE") because the RO had failed to consider his entitlement to TDIU benefits. The Veterans Court rejected this argument, concluding that he had no right to TDIU benefits because he had not specifically requested them in his initial claim.

On appeal, this court reversed. We concluded that although Roberson had not specifically requested TDIU benefits, the VA was required to consider his entitlement to such benefits because the record contained clear evidence of his unemployability. Roberson, 251 F.3d at 1384. We explained that "regardless of whether [a] claim is specifically labeled as a claim for TDIU," the VA is obligated to "determine all potential claims raised by the evidence." Id. Accordingly, the VA must consider whether a TDIU award is warranted whenever "a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability." Id.

A similar analysis applies here. Like Roberson, Comer, acting pro se, sought an increased disability rating.[1] Like Roberson, Comer presented persuasive evidence of his unemployability: he has not been employed on a full-time basis since 1975 and the Veterans Court did not dispute that there was "extensive record evidence of [Comer's] employment difficulties." 2007 Veterans Court Decision, slip op. at 3-4. Thus, as in Roberson, the VA should have considered Comer's entitlement to TDIU benefits. Although he did not explicitly assert the right to a TDIU award for the period from February 26, 1999, to May 5, 2004, his pro se appeal, which sought an earlier effective date and a higher disability rating for PTSD benefits was sufficient, when coupled with the evidence showing his unemployability, to raise the issue of his entitlement to an earlier effective date for his TDIU award. Simply put, under Roberson, a claim to TDIU

---

[1] The Veterans Court has long held that an informal claim for an increased rating will be construed as a claim for the highest rating possible. See, e.g., Norris v. West, 12 Vet. App. 413, 419-20 (1999). Thus, as the board correctly acknowledged, Comer's appeal of the RO's rating determination was required to be construed "as an appeal for the maximum benefit allowable by law or regulation." 2005 Board Decision, slip op. at 2.

benefits is not a free-standing claim that must be pled with specificity; it is implicitly raised whenever a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating. See Szemraj v. Principi, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (The VA is required, "regardless of the specific labels . . . claims are given in the veteran's pleadings," to read pro se submissions sympathetically and "to determine all potential claims raised by the evidence." (citations and internal quotation marks omitted)).

The government, however, attempts to distinguish Comer's situation from that presented in Roberson. In its view, Roberson does not apply: (a) to appeal submissions to the board following an initial rating determination, or (b) to situations in which a veteran is assisted by a representative from a veterans' service organization.

A.

The government concedes that under Roberson the RO has the duty to consider whether a claimant is entitled to a TDIU award, even when entitlement to TDIU benefits is not explicitly raised. It contends, however, that Roberson is inapplicable here because Comer "does not seek a sympathetic reading of a claim or pleading but, instead, seeks the board's review of an issue that was not raised on appeal."

The government reads Roberson too narrowly. This is not the first time that it has advanced an overly restrictive interpretation of Roberson, and this will not be the first time its efforts will be rejected. See Andrews v. Nicholson, 421 F.3d 1278, 1282 (Fed. Cir. 2005) ("Roberson is not limited to its particular facts and instead . . . requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings." (internal quotation marks omitted)); Szemraj, 357 F.3d at 1373 ("But

our decision in <u>Roberson</u> is not limited to its particular facts as the Court of Appeals for Veterans Claims appears to have suggested here."); <u>Moody v. Principi</u>, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (The VA is required to give a sympathetic reading to a veteran's filings even where the facts of a particular case do not "coincide" with the facts presented in <u>Roberson</u>). Although <u>Roberson</u> involved an initial claim submitted to an RO, there is no reason that the rule it articulated should not apply with equal force to a notice of disagreement submitted after an RO's decision. Unlike at the Veterans Court, where proceedings are more adversarial in nature, <u>see</u> <u>Forshey v. Principi</u>, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (en banc), in proceedings before the board, "the relationship between the veteran and the government is non-adversarial and pro-claimant," <u>Jaquay v. Principi</u>, 304 F.3d 1276, 1282 (Fed. Cir. 2002). Because of the paternalistic nature of the proceedings, the board, like the RO, is required "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." <u>McGee v. Peake</u>, 511 F.3d 1352, 1357 (Fed. Cir. 2008) (citations and internal quotation marks omitted).

Here, Comer appealed a 2004 RO decision that granted him an increased PTSD disability rating of 70 percent and a TDIU award, both of which were effective May 5, 2004. His appeal asserted that he was entitled to "an increased evaluation for PTSD and an earlier effective date" for his PTSD disability benefits. Although Comer did not state specifically that he was entitled to an earlier effective date for his TDIU award, his claim for an increased rating and an earlier effective date for his PTSD benefits, coupled with the persuasive and pervasive evidence in the record demonstrating his unemployability, was sufficient to raise the issue of his entitlement to an earlier effective

date for his TDIU award as well. While the Veterans Court correctly noted that a veteran is obligated to raise an issue in a notice of disagreement if he wishes to preserve his right to assert that issue on appeal, see 2007 Veterans Court Decision, slip op. at 3-4, the determination of whether an issue has been properly raised must be made with due regard for the VA's duty to read a veteran's submissions sympathetically. In other words, the VA's duty to read an appeal submission sympathetically to ascertain all potential claims it contains is antecedent to its duty to ensure that an issue has been properly raised on appeal. Cf. Andrews, 421 F.3d at 1283 ("[T]he VA's duty to sympathetically read a veteran's pro se CUE motion to discern all potential claims is antecedent to a determination of whether a CUE claim has been pled with specificity.").

Indeed, 38 C.F.R. § 20.202 specifically provides that the board is required to construe an appellant's arguments "in a liberal manner for purposes of determining whether they raise issues on appeal." See Robinson v. Peake, 21 Vet. App. 545, 552 (2008) ("[T]he Board is required to consider all issues raised either by the claimant or by the evidence of record. Indeed, by regulation, the Board is required to construe an appellant's arguments in a liberal manner . . . ." (citations and internal quotation marks omitted)). A liberal and sympathetic reading of appeal submissions is necessary because a pro se veteran may lack a complete understanding of the subtle differences in various forms of VA disability benefits and of the sometimes arcane terminology used to describe those benefits. See Hughes v. Rowe, 449 U.S. 5, 15 (1980) (Pleadings drafted by pro se litigants should be held to a lesser standard than those drafted by lawyers since "[a]n unrepresented litigant should not be punished for his failure to

recognize subtle factual or legal deficiencies in his claims."); Forshey, 284 F.3d at 1357 ("[I]n situations where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below.").

"The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them." Barrett v. Nicholson, 466 F.3d 1038, 1044 (Fed. Cir. 2006); see also Jaquay, 304 F.3d at 1280 ("Congress has created a paternalistic veterans' benefits system to care for those who served their country in uniform."). The VA disability compensation system is not meant to be a trap for the unwary, or a stratagem to deny compensation to a veteran who has a valid claim, but who may be unaware of the various forms of compensation available to him. To the contrary, the VA "has the affirmative duty to assist claimants by informing veterans of the benefits available to them and assisting them in developing claims they may have." Jaquay, 304 F.3d at 1280. The need for such assistance is particularly acute where, as here, a veteran is afflicted with a significant psychological disability at the time he files his appeal. See 2005 Board Decision, slip op. at 3 (noting that Comer's "symptoms have included nightmares and flashbacks, sleep impairment, depression, flat affect and self isolation").

B.

We also reject the government's contention that the board had no duty to construe Comer's appeal sympathetically because he had assistance from an aide from a veterans' service organization. Although we have held that the duty to construe a veteran's filings sympathetically does not necessarily apply when a veteran is

represented by an attorney, Andrews, 421 F.3d at 1283, the assistance provided by the DAV aide is not the equivalent of legal representation. Comer filed his initial claim pro se, appealed the decision denying him benefits pro se, and filed his initial notices of disagreement pro se. It was not until after he had filed his appeal that a DAV aide, in December 2003, filed a statement on his behalf. This sort of limited assistance is insufficient to disqualify Comer as a pro se claimant.

Indeed, even if Comer had received more significant assistance from the DAV, representation by an organizational aide is not equivalent to representation by a licensed attorney. Although aides from veterans' service organizations provide invaluable assistance to claimants seeking to find their way through the labyrinthine corridors of the veterans' adjudicatory system, they are "not generally trained or licensed in the practice of law." Cook v. Brown, 68 F.3d 447, 451 (Fed. Cir. 1995). Thus, in Jacquay, 304 F.3d at 1282-88, we excused the fact that a veteran had sent his appeal to the wrong address, even though he had had some assistance from a non-attorney representative from a veterans' service organization.

The DAV was created by congressional charter "to advance the interests . . . of all wounded, injured, and disabled American veterans" and "to cooperate with the Department of Veterans Affairs . . . [in] advancing the condition, health, and interests of . . . disabled veterans." 36 U.S.C. § 50302 (emphasis added). Since the function of aides from the DAV is to cooperate with the VA in obtaining benefits for disabled veterans, their role is fundamentally different from attorneys who represent clients in adversarial proceedings. See Stanley v. Principi, 283 F.3d 1350, 1355-56 (Fed. Cir 2002) (noting that lawyers had been historically excluded from board proceedings in

order to keep the system informal and non-adversarial). To hold that a veteran forfeits his right to have his claims read sympathetically if he seeks assistance from a veterans' service organization would be to discourage veterans from seeking the much-needed assistance that those organizations provide.

## II.

We next turn to Comer's second argument on appeal, that the VA had an obligation to inform him that he was required to file a CUE motion if he wanted to obtain benefits retroactive to the date of his initial claim. He filed a claim for disability benefits in December 1988, and although the RO rated him as 30 percent disabled due to PTSD, it denied him benefits on the ground that his PTSD was not connected to his Vietnam service. In 2001, however, Comer persuaded the board that new evidence justified the reopening of his claim. He was then awarded service-connected benefits for PTSD, but those benefits were only effective as of February 26, 1999, the date of his motion to reopen his claim. Comer contends that the VA was obligated, under 38 U.S.C. § 5103(a), to inform him that he could only obtain benefits retroactive to December 29, 1988, the date of his initial claim, by filing a motion asserting that the RO's initial determination that his PTSD was not service-connected contained CUE.[2] In support, he says that section 5103(a) requires the VA to provide a veteran with notice of "any information . . . that is necessary to substantiate [his] claim," 38 U.S.C. § 5103(a),

---

[2] Although the RO initially concluded that Comer's PTSD was not service-connected, when the board reopened his claim it noted that Comer had been diagnosed with PTSD and that "it generally appears that the diagnosis of PTSD is related to service." 2001 Board Decision, slip op. at 5. On remand, the RO noted that Comer's military records showed that, while in Vietnam, Comer was part of a division that had "participated in the Phase V Vietnam Counter Offensive and another unnamed campaign."

and contends that because he could not "substantiate" his claim for retroactive benefits without filing a CUE motion, the VA should have informed him that he needed to file such a motion. [3]

Without a doubt, the process for reopening a previously disallowed claim and obtaining retroactive benefits can be exceedingly difficult, particularly for a veteran who is proceeding pro se. Where, as here, a veteran mounts a successful campaign to reopen a previously disallowed claim based on new and material evidence, he is likely to assume that he will have an opportunity to obtain the benefits to which he would have been entitled had he prevailed on his original claim. Surprisingly, however, this is not the case. The earliest effective date for an award based on a veteran's request to reopen a final decision based on new and material evidence is generally the date that the application to reopen was filed. See 38 U.S.C. § 5110(a). It is only by filing a CUE claim that a veteran can obtain benefits retroactive to the date of the original RO decision. 38 U.S.C. §§ 5109A(b), 7111(b); Leonard v. Nicholson, 405 F.3d 1333, 1337 (Fed. Cir. 2005) ("[A]bsent a showing of CUE, [a veteran] cannot receive disability payments for a time frame earlier than the application date of his claim to reopen, even with new evidence supporting an earlier disability date.").

As discussed above, the VA has an "affirmative duty to assist claimants by informing [them] of the benefits available to them and assisting them in developing

---

[3]     Section 5103(a) provides: "Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary . . . will attempt to obtain on behalf of the claimant."

claims they may have."  See Jaquay, 304 F.3d at 1280.  It is only reasonable to expect, therefore, that if the VA is confronted with a claimant who seeks retroactive benefits, it will inform him that he needs to file a CUE motion in order to obtain those benefits.  It is troubling that the VA apparently never informed Comer that he needed to file a CUE motion, but then denied his request for retroactive benefits on the ground that he had "not specifically alleged clear and unmistakable error" in the initial RO decision.  See 2005 Board Decision, slip op. at 23.

We decline, however, to resolve the issue of whether the VA had a duty, under section 5103(a), to notify Comer that he could only obtain retroactive benefits by filing a CUE motion because we conclude that even if the VA had such a duty, failure to fulfill it does not rise to reversible error.[4]  In Sanders, this court held that a violation of the VA's section 5103(a) notice obligations is presumptively prejudicial, but we also held that the VA can rebut the presumption.  487 F.3d at 891.

---

[4] Another reason we decline to resolve the question of whether the VA had a duty to notify Comer that he could only obtain retroactive benefits by filing a CUE motion is that this issue was not addressed by either the Veterans Court or the board.  "[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."  Singleton v. Wulff, 428 U.S. 106, 120 (1976); see also Boggs v. West, 188 F.3d 1335, 1337-38 (Fed. Cir. 1999) (refusing to resolve an issue on appeal where the Veterans Court did not "make reference to or decide [the] issue.").  Indeed, even assuming arguendo that the VA had a duty to inform Comer about the availability of a CUE motion, the VA has had no opportunity to make factual determinations regarding whether Comer was, in fact, provided with notice that he needed to file a CUE motion to obtain retroactive benefits, or whether he otherwise had actual knowledge regarding the need to file such a motion.  See Sanders v. Nicholson, 487 F.3d 881, 889 (Fed. Cir. 2007), cert. granted, Peake v. Sanders, 128 S. Ct. 2935 (2008) (Even when section 5103(a) notice is defective, the VA can show that the error was not prejudicial by demonstrating "that any defect in notice was cured by actual knowledge on the part of the claimant."); see also Mayfield v. Nicholson, 444 F.3d 1328, 1336 (Fed. Cir. 2006) (The question of whether a particular notice satisfies the notice requirements of section 5103(a) is "a substantially factual determination of the type that should be made by the agency in the first instance.").

Here, the government correctly observes that there is no time limit for filing a CUE claim. See 38 C.F.R. § 3.105(a). Accordingly, Comer has the right to file a CUE motion now, and if successful, he could obtain disability benefits retroactive to his initial claim. Thus, assuming arguendo that the VA failed to fulfill its section 5103(a) notice obligations, such failure does not constitute reversible error because Comer has not forfeited the right to bring a CUE claim. Cf. Newhouse v. Nicholson, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (sustaining a Veterans Court determination that violation of notice obligations was harmless error where the VA had made an unreviewable factual determination that a claimant "had actual knowledge that he was required to submit medical evidence regarding his hearing loss to substantiate his claim").

Notwithstanding our conclusion that VA's failure does not constitute grounds for reversal, we are not unmindful of the very real difficulties Comer has faced in his lengthy struggle to obtain disability benefits. Since 1988, Comer has persistently and articulately asserted that he is entitled to PTSD disability compensation. Yet—despite the fact that the VA does not dispute that Comer has suffered from PTSD since at least 1988 and that it acknowledged, in 2003, that his PTSD is service connected—it has yet to provide him disability benefits for the period from 1988 to 1999.

As a final matter, the issue of whether the VA was required to inform Comer that he needed to file a CUE claim is moot if he has, in fact, already filed one. CUE claims "must be pled with specificity," Johnston v. Nicholson, 421 F.3d 1285, 1287 (Fed. Cir. 2005), and must assert, based upon the evidence of record at the time of the original decision, an error that is "outcome determinative." Cook v. Principi, 318 F.3d 1334, 1344 (Fed. Cir. 2002) (en banc). Here, although this court has not been provided with a

complete record of all communications between Comer and the VA, there is evidence that at several points during his seemingly interminable struggle to obtain disability benefits, he made very specific allegations explaining why he believed that the original RO decision denying service connection contained clear error. For example, in 1999, Comer wrote to the board, stating that the RO's determination that he was only a "part packer" while in Vietnam was "grossly erroneous." He explained that orders, which had been "cut in country," had assigned him to infantry duties, and that he could therefore not understand how the VA could have determined that his PTSD was not connected to his Vietnam service. Likewise, in November 2000, Comer wrote to the board stating that he "believe[d] that the record establishes service connection" because he "was assigned to a combat unit and [had] nightmares as a result of that assignment." Again, in June 2003, he submitted a hand-written letter to the Veterans Court, arguing that because the VA had now acknowledged that his PTSD was service-connected, the RO's initial determination to the contrary contained "clear error." He argued that although the RO, in its initial decision, had concluded there was "no evidence" that he had served in combat, his personnel files clearly showed that he was a "combat veteran."

Whether a veteran has raised a particular claim is a factual determination, outside the purview of our appellate authority. See Bonner v. Nicholson, 497 F.3d 1323, 1328 (Fed. Cir. 2007); Moody, 360 F.3d at 1310. Accordingly, we remand the question of whether Comer has raised a valid CUE claim to the Veterans Court for further consideration. Although Comer still has the right to file a new CUE motion, a determination by the Veterans Court that he had asserted a valid CUE challenge in his

earlier filings would presumably entitle him to expedited consideration of his claim.  <u>See</u> 38 U.S.C. § 7112 (providing for the expedited treatment of claims remanded by the Veterans Court).

CONCLUSION

Accordingly, the judgment of the United States Court of Appeals for Veterans Claims is reversed, and the case is remanded for further proceedings consistent with this opinion.

<u>COSTS</u>

Costs to appellant.

<u>REVERSED AND REMANDED</u>