BRYSON, Circuit Judge,
concurring:
I agree with the court that even if a claimant has a due process right to confront any VHA physician or independent medical examiner who provides a medical opinion upon request, the failure to provide for confrontation in this case was not prejudicial to Mr. Gambill. More fundamentally, however, I believe that within the veterans’ disability compensation system due process does not require that claimants be given the right to confront physicians who provide such opinions.
A
Almost a quarter century ago, the Supreme Court analyzed the application of the Due Process Clause to the veterans’ benefits system in its seminal decision in Walters v. National Association of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). In that case, the Court addressed the constitutionality of a statute that sharply restricted the maximum fee that may be paid to an attorney representing a veteran before the DVA in a claim for benefits for service-connected death or disability. Although recognizing that the practical effect of the statute was to deny legal representation to veterans in most DVA compensation proceedings, the Court upheld the statute against a due process challenge. In so doing, the Court analyzed the veterans’ benefits system in detail and concluded that, in light of the informal and pro-claimant nature of that system, the Due Process Clause does not require the same kinds of procedures that would be required in a more conventional adversarial proceeding. The Court’s analysis in Walters is highly pertinent to the issue before us and virtually dictates the proper disposition of the constitutional claim raised in this case.
The Walters Court began its analysis by emphasizing that due process “is a flexible concept — that the processes required by the [Due Process] Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur.” 473 U.S. at 320, 105 S.Ct. 3180. Importantly, the Court emphasized that the Due Process Clause does not require procedures that guarantee against an erroneous deprivation, and that “the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard.” Id. at 320-21, 105 S.Ct. 3180. Moreover, the Court stated that a particular process is not constitutionally infirm simply because another process would have been useful in a particular *1314 case; instead, the Court explained, “a process must be judged by the generality of cases to which it applies, and therefore, process which is sufficient for the large majority of a group of claims is by constitutional definition sufficient for all of them.” Id. at 330, 105 S.Ct. 3180.
More generally, the Supreme Court has characterized the critical components of due process as notice and the opportunity to be heard “at a meaningful time and in a meaningful manner.” Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). While it is clear that due process requires “some kind of hearing” when a property interest is at stake, Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the form of the hearing can vary. Due process thus “calls for such procedural protections as the particular situation demands.... [N]ot all situations calling for procedural safeguards call for the same kind of procedure.” Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In particular, due process does not require a trial-type hearing in every case. Cafeteria Workers v. McElroy, 367 U.S. 886, 894-95, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).
The Court has set forth three factors that warrant consideration in determining what specific procedures must be provided in particular cases: (1) “the private interest that will be affected by the official action”; (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews, 424 U.S. at 335, 96 S.Ct. 893.
The Supreme Court in Walters addressed each of those factors as they pertain to veterans’ benefits determinations. As to the private interest that will be affected by the official decision, the Walters Court held that disability and survivorship benefits, which are not granted on the basis of need, “are more akin to the Social Security benefits involved in Mathews than they are to the welfare payments upon which the recipients in Goldberg [v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970),] depended for their daily subsistence.” 473 U.S. at 333, 105 S.Ct. 3180. Although the private interest in disability benefits is still substantial, the Walters Court identified the difference in the individual’s interest in disability benefits and in welfare benefits as justifying the less formal procedures employed in veterans’ benefits cases than in cases involving the termination of welfare benefits. Id.
The Walters Court made clear that the other two Mathews factors likewise justified the use of informal procedures in the veterans’ benefits system. After analyzing the operation of that system, the Court concluded that “great weight must be accorded to the Government interest at stake here.” 473 U.S. at 326, 105 S.Ct. 3180. The Court explained:
The flexibility of our approach in due process cases is intended in part to allow room for other forms of dispute resolution; with respect to the individual interests at stake here, legislatures are to be allowed considerable leeway to formulate such processes without being forced to conform to a rigid constitutional code of procedural necessities.
Id. “It would take an extraordinarily strong showing of probability of error under the present system,” the Court added, to warrant a holding that the statute barring compensation of counsel in veterans’ *1315 benefits cases denied the claimants’ rights to due process. Id.
In light of the Court’s analysis in Walters, the procedures employed by the DVA to obtain and use medical experts’ opinions in veterans’ disability benefits cases do not, in my judgment, violate due process. Given Congress’s desire that the proceedings in veterans’ benefits cases be “as informal and nonadversarial as possible” in veterans’ benefits cases, Walters, 473 U.S. at 323-24, 105 S.Ct. 3180, the procedures available to claimants to obtain and challenge expert medical opinions provide notice and an opportunity to be heard in a meaningful manner and thus satisfy due process standards. I set forth below the reasons why that is so, again drawing heavily on the Supreme Court’s due process analysis in Walters.
B
Walters makes clear that the informal and uniquely pro-claimant nature of the veterans’ disability compensation system is of critical importance in assessing the constitutionality of the procedures that are employed by the DVA. The Court surveyed the DVA’s procedures in some detail, and those procedures are, if anything, even more protective of claimants now than they were at the time of Walters. In essence, the procedures are as follows:
Any veteran or veteran’s representative can bring a claim for service-connected disability to a regional office of the DVA. No statute of limitations bars the filing of an application for benefits, and the denial of an application has no formal res judicata effect. Walters, 473 U.S. at 311, 105 S.Ct. 3180. The DVA is required to notify the claimant and the claimant’s representative of any information and any medical or lay evidence that is needed to substantiate the claim; as part of that notice, the DVA must indicate which portion of that information and evidence is to be provided by the claimant and which portion the DVA will attempt to obtain on behalf of the claimant. 38 U.S.C. § 5103A. The claimant has a right to a hearing before the regional office and can appear, either alone or with a representative; the hearing, moreover, is ex parte, as there is no representative of the government opposing the claim. 38 C.F.R. § 3.103(a).
At the hearing before the regional office, the claimant is entitled to produce witnesses. 38 C.F.R. § 3.103(c)(2). To assure “clarity and completeness of the hearing record, questions which are directed to the claimant and to witnesses are to be framed to explore fully the basis for claimed entitlement rather than with an intent to refute evidence or to discredit testimony.” Id. Any evidence offered by the claimant and any contention or argument a claimant may offer is to be included in the record. Id. § 3.103(d). By statute and regulation, it is the obligation of the DVA to assist the claimant in developing the facts pertinent to the claim. 38 U.S.C. § 5103A; 38 C.F.R. § 3.103(a), (c). And the regional office is required to construe all applications liberally in favor of the veteran. See 38 C.F.R. § 3.155(a); see also Moody v. Principi, 360 F.3d 1306, 1310 (Fed.Cir.2004). Finally, unlike in many other settings, the claimant is not required to prove the claim by a preponderance of the evidence; instead, the DVA is instructed to give the benefit of the doubt to the claimant when “there is an approximate balance-of positive and negative evidence regarding any issue material to the determination of the matter.” 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
Any decision on the veteran’s claim must be in writing; it must advise the claimant of the reasons for the decision; it must include a summary of the evidence considered by the DVA; and it must provide an explanation of the procedure for obtaining *1316 review of the decision. 38 U.S.C. § 5104; 38 C.F.R. § 3.103(f). If the veteran disagrees with the decision, the regional office will consider whether to resolve the disagreement, such as by granting the benefit sought. If the regional office does not resolve the disagreement, it will prepare a Statement of the Case to assist the claimant in perfecting an appeal to the Board of Veterans’ Appeals. 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 3.103(f).
Like the regional office, the Board is required to construe all of the veteran’s arguments “in a liberal manner.” 38 C.F.R. § 20.202. A claimant has a right to a hearing on appeal before the Board at which the appellant and witnesses may be present. Id. § 20.700. Like the hearing before the regional office, the hearing before the Board is “ex parte in nature and nonadversarial,” with no government representative present to oppose the appeal. Id. § 20.700(c). At the hearing, the proceeding is not governed by the rules of evidence, and the parties are “permitted to ask questions, including follow-up questions of all witnesses but cross-examination will not be permitted.” Id. If it appears during such a hearing that additional evidence would assist in the review of the questions at issue, the Board may direct that the record be left open so that the appellant may obtain the desired evidence. Id. § 20.709. In addition, if necessary evidence cannot be otherwise obtained, the Board may issue a subpoena at the appellant’s request to obtain the presence of a witness residing within 100 miles of the place where the hearing is to be held. Id. § 20.711. And, as occurred in this case, the Board may obtain a medical opinion from a VELA physician or an independent medical examiner. Id. § 20.901; 38 U.S.C. § 7109(a).
The above description makes it abundantly clear that the veterans’ disability compensation system differs dramatically from a conventional adversarial process. This court and the Supreme Court “have long recognized that the character of the veterans’ benefits statutes is strongly and uniquely pro-claimant.” Hodge v. West, 155 F.3d 1356, 1362 (Fed.Cir.1998). The relationship between the veteran and the government is nonadversarial, Jaquay v. Prindpi, 304 F.3d 1276, 1282 (Fed.Cir.2002) (en banc), and because of the paternalistic nature of DVA proceedings, the DVA is required “to fully and sympathetically develop the veteran’s claim to its optimum before deciding it on the merits,” Comer v. Peake, 552 F.3d 1362, 1368 (Fed.Cir.2009); McGee v. Peake, 511 F.3d 1352, 1357 (Fed.Cir.2008). The process is “designed to function throughout with a high degree of informality and solicitude for the claimant.” Walters, 473 U.S. at 311, 105 S.Ct. 3180. Then-Chief Judge Mayer put the point succinctly when he stated, “Viewed in its entirety, the veterans’ system is constructed as the antithesis of an adversarial, formalistic dispute resolving apparatus.” Forshey v. Prindpi, 284 F.3d 1335, 1360 (Fed.Cir.2002) (en banc) (Mayer, C.J., dissenting).
C
As the Supreme Court observed in Walters, Congress is fully aware that the veterans’ disability compensation system does not follow the conventional adversarial fact-finding model; rather, “Congress desired that the proceedings be as informal and nonadversarial as possible.” 473 U.S. at 323-24, 105 S.Ct. 3180. In the years since Walters was decided, Congress has adhered to that model. In fact, Congress made a point of preserving the nonadversarial, pro-claimant character of the DVA system when it added judicial review to the system in 1988. The House report on the 1988 legislation stated that point clearly:
*1317 Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits. This is particularly true of service-connected disability compensation where the element of cause and effect has been totally by-passed in favor of a simple temporal relationship between the incurrence of the disability and the period of active duty.
I[m]plicit in such a beneficial system has been an evolution of a completely ex-parte system of adjudication in which Congress expects VA to fully and sympathetically develop the veteran’s claim to its optimum before deciding it on the merits. Even then, VA is expected to resolve all issues by giving the claimant the benefit of any reasonable doubt. In such a beneficial structure there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof.
To the extent possible, the committee expects that the procedures employed at the regional office level will continue to be employed by VA, in order to assure that claims are handled in an expeditious manner that is sympathetic to the veteran’s claim. The committee believes that the existing system achieves a high degree of accuracy and fairness and intends that no changes be made to the system unless it would enhance achievement of these two goals.
H.R.Rep. No. 100-963, at 13, 15 (1988), repyinted in 1988 U.S.C.C.A.N. 5782, 5795, 5797. This court made the same point more recently in Hodge v. West, 155 F.3d at 1362:
Congress itself has recognized and preserved the unique character and structure of the veterans’ benefits system. For example, when it passed the Veterans’ Judicial Review Act and Veterans’ Benefits Improvement Act of 1988, and thus for the first time established judicial review for DVA disputes, Congress emphasized the historically non-adversarial system of awarding benefits to veterans and discussed its intent to maintain the system’s unique character!.]
While proceedings are more adversarial when a veteran appeals to the Veterans Court, the process at the administrative stages within the DVA remains much as the Supreme Court described it in 1985: “[T]he process prescribed by Congress for obtaining disability benefits does not contemplate the adversary mode of dispute resolution utilized by courts in this country.” Walters, 473 U.S. at 309, 105 S.Ct. 3180; see also 38 C.F.R. § 20.700(c) (“Hearings conducted by the Board are ex parte in nature and nonadversarial. Parties to the hearing will be permitted to ask questions, including follow-up questions, of all witnesses but cross-examination will not be permitted.”).
Apart from demonstrating Congress’s general desire to preserve the nonadversarial nature of the veterans’ disability compensation system, the legislative history of the 1988 statute makes it clear that Congress specifically wished to avoid the introduction of adversarial procedures such as interrogatories. Early versions of the 1988 Act contained provisions for serving written interrogatories on any person, including DVA employees. Those provisions were omitted from the statute as enacted, however. A joint statement by the Senate and House Committees regarding the bill that was ultimately enacted explained that written interrogatories, along with several other procedural provisions, had been omitted. The statement explained, “The Committees intend [that the Board’s] informal procedures be continued.” Explanatory Statement of the *1318 Compromise Agreement on S. 11, As Amended, the “Veterans’ Judicial Review Act”, 134 Cong. Rec. 31473, 31477 (1988), reprinted in 1988 U.S.C.C.A.N. 5834, 5843 (“Explanatory Statement ”). The sponsor of the legislation in the Senate underscored that point, explaining that Congress’s intent was “that the BVA continue to operate in its informal, nonadversarial manner.” 134 Cong. Rec. 31468 (1988) (remarks of Sen. Cranston).
D
Like the procedure used in the veterans’ disability compensation system generally, the procedure that the DVA has provided for a claimant to obtain, rely on, and respond to an expert medical opinion is nonadversarial. The DVA’s regulations provide that a claimant or the claimant’s representative may request a medical opinion from a VHA physician or an independent medical expert, which “will be granted upon a showing of good cause, such as the identification of a complex or controversial medical ... issue involved in the appeal.” 38 C.F.R. § 20.902. The Board’s authority to obtain a medical opinion from a VHA physician on its own initiative is part of the DVA’s duty to assist a claimant to obtain evidence to substantiate a claim. See 38 C.F.R. § 3.159(c)(4). The Board may request a medical opinion from a VHA physician “on medical questions involved in the consideration of an appeal” when, in the Board’s judgment, “such medical expertise is needed for equitable disposition of an appeal.” Id. § 20.901. The Board has parallel statutory authority to obtain a medical opinion from an independent medical expert if “expert medical opinion, in addition to that available within the Department, is warranted by the medical complexity or controversy” involved in the appeal. 38 U.S.C. § 7109(a); 38 C.F.R. § 20.901(d).
When the Board requests such an opinion, the Board must provide the claimant with notice that a VHA physician’s opinion has been requested and must provide a copy of the opinion to the claimant when it is received by the Board. 38 C.F.R. § 20.903(a); see also 38 U.S.C. § 7109(c) (when the VA obtains an opinion from an independent medical expert, the Board similarly notifies the claimant of the request for an expert opinion and provides a copy of the expert’s report as soon as it is received). The claimant then has 60 days to respond to the medical opinion by submitting any relevant evidence or argument that may assist the Board in reaching an equitable result. 38 C.F.R. § 20.903(a).
Mr. Gambill contends that when the Board requests an expert medical opinion, due process requires the DVA to afford a veteran not just an opportunity to respond to the opinion, but also an opportunity to confront the physician who submitted it. While he does not argue that he is constitutionally entitled to in-person cross-examination of the physician, he argues that he is at least entitled to use interrogatories directed to the physician as a way to confront the evidence against him. Interrogatories must be permitted, according to Mr. Gambill, because (1) they are essential to the fairness of the proceedings in that they are substantially more effective than the submission of contrary evidence alone, and (2) they are less burdensome for physicians than in-person cross-examination.
1
Mr. Gambill has offered no convincing reason to believe that if a claimant is not allowed to confront medical experts’ opinions, the results of Board appeals will be so unreliable as to be constitutionally invalid. While in some cases confrontation of the physician who has given a medical opinion may be productive, the nature of expert medical opinions is such that in many cases the most effective way of coun *1319 tering a questionable opinion will be to offer a contrary opinion with more support in the medical literature or from other medical experts.
This case provides a good illustration of why that is so. Mr. Gambill’s quarrel with the VHA ophthalmologist’s report focuses on the ophthalmologist’s statement that she was unable to find any support in the literature for the proposition that head trauma is a cause or an associated risk factor in the development of cataracts. To the extent that Mr. Gambill wished to challenge her statement about the medical literature, the best way to proceed would seem to be to introduce contrary medical opinions and literature on the point in dispute. After all, what is important in such a case is not whether the physician is an expert on the particular topic at issue or how much effort she put into her search of the literature; what matters is what experts in the field believe and what a thorough search of the literature would reveal. That information could effectively be developed through the introduction of contrary opinions from experts and from the medical literature. Indeed, Mr. Gambill sought to use that approach in this case. The evidence he offered was ineffective, not because of the general ineffectiveness of contrary evidence as a means of challenging a medical professional’s opinion, but because it did not establish causation on the facts of this case.
Mr. Gambill’s attorney asserts that the ability to confront an expert witness who gives a medical opinion is preferable to being limited to introducing contrary evidence. Of course, a lawyer representing a party in a trial-type setting will always prefer to have as many tools for challenging adverse evidence as possible. But as Justice Brennan wrote for the Supreme Court some years ago, “[I]t should not routinely be assumed that any decision made without the forms of adversary fact-finding familiar to the legal profession is necessarily arbitrary or incorrect.” Smith v. Org’n of Foster Families for Equality & Reform, 431 U.S. 816, 851 n. 58, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). The pertinent question is not whether, in a particular case, a skilled advocate could make effective use of tools of confrontation such as interrogatories or cross-examination. Rather, the question is whether the absence of such tools would be likely to have such a distortive effect on the truth-seeking process and produce such unreliable results as to render the proceeding fundamentally unfair. At least with respect to expert medical opinions obtained by the Board to assist it in assessing individual claims, I am satisfied that the regulatory prohibition on confronting medical experts, either by in-person cross-examination or through interrogatories, does not create an unacceptable risk of unreliable outcomes.
That is especially true in light of the entire complex of protections afforded to claimants in the disability compensation process, including the DVA’s duty to assist the claimants in presenting their claims, its duty to construe the claimant’s presentation liberally, the rule that the claimant will be given the benefit of the doubt in close cases, and the ex parte nature of the proceedings, in which the government is not represented by an attorney or other representative whose role is to oppose the claim. While Mr. Gambill has characterized the absence of confrontation rights in the veterans’ disability compensation system as indicative that the system provides for less process than in more formal settings, a more accurate description would be that it offers different process. To reiterate the point made by the Supreme Court in Walters, the flexibility of due process “is intended in part to allow room for other forms of dispute resolution,” and to allow “considerable leeway” in formulating such processes “without being forced *1320 to conform to a rigid constitutional code of procedural necessities.” 473 U.S. at 326, 105 S.Ct. 3180.
Finally, with respect to the risk of inaccurate results, there has been no showing in this case — or elsewhere so far as we are advised — that the nonadversarial veterans’ disability benefits system, with its many pro-claimant features, produces more erroneous decisions against claimants than would be produced in an adversarial system in which confrontation of witnesses was permitted, but in which the various procedural advantages that are afforded to veteran-claimants were absent. Even though in the Walters case the plaintiffs had introduced evidence that the participation of lawyers resulted in some marginal benefit to claimants, the Supreme Court found that showing to be insufficient. The showing made in that case, the Court observed, did not constitute the “extraordinarily strong of probability of error” that would be required to warrant constitutional condemnation of the current system. 473 U.S. at 326, 105 S.Ct. 3180. A fortiori, the showing in this case, which is essentially limited to the unspoken (but hardly unassailable) proposition that more elaborate process is likely to produce more accurate results, is insufficient to invalidate the system devised by the agency and blessed by Congress.
2
As to the issue of burdensomeness, it is no doubt true, as Mr. Gambill contends, that interrogatories are less intrusive than in-person cross-examination. Nonetheless, interrogatories would still be burdensome for the physicians who would be required to respond to them. In addition, apart from expenditure of time in framing appropriate responses to the interrogatories, the submission of interrogatories could well result in collateral conflicts over the content of the interrogatories and the adequacy of the responses.
A further problem with the position taken by Mr. Gambill in this case is that the scope of the confrontation right for which he argues is entirely undefined. Mr. Gambill suggests that the confrontation right he seeks would not include the right of in-person cross-examination, and that the right to submit interrogatories would be limited. He states that “a claimant should only be allowed to submit a reasonable number of questions, say, five or six on the outside.” That proposal suggests that the Due Process Clause requires “five or six” interrogatories, but not twenty. The arbitrariness of that distinction is obvious.
Adopting Mr. Gambill’s position would virtually ensure that the Board, the Veterans Court, and this Court would be collectively launched into an ongoing line-drawing exercise regarding the number and character of the interrogatories that would have to be allowed. Mr. Gambill may have conceded that only “five or six” interrogatories need be granted, but his concession would not bind the next claimant, who would want more, or the next, who would argue that the responses to the interrogatories were inadequate and follow-up interrogatories or in-person cross-examination were required. The overall burdensomeness of proceeding down that road is clear.
In short, the use of interrogatories would undermine, at least to some degree, the nonadversarial nature of the veterans’ compensation system by forcing medical personnel into an adversarial posture with regard to the veteran claimants. Mr. Gambill responds that interrogatories are “less adversarial than the subpoena procedure,” but he does not dispute that their use would introduce some level of antagonistic interaction. I cannot lightly disregard the interest in maintaining the nonadversarial nature of the system. When that interest is balanced against the limited benefits of allowing interrogatories, I con- *1321 elude that the availability of interrogatories is not constitutionally mandated.
E
In an often-cited 1975 article, Judge Henry Friendly surveyed the due process landscape and addressed a broad range of procedures that may not be necessary in particular cases where full trial-type proceedings are not required. Henry J. Friendly, “Some Kind of Hearing ”, 123 U. Pa. L.Rev. 1267 (1975). Among the fundamental elements of a fair hearing, he identified an unbiased tribunal, notice of the proposed action and the grounds for it, and the opportunity to present reasons why the proposed action should not be taken. He identified the right to counsel and the right of confrontation as less fundamental to a fair proceeding. Id. at 1279-91.
While acknowledging the importance of confrontation procedures in criminal cases and certain civil matters, Judge Friendly questioned the universal applicability of such procedures “to the thousands of hearings on welfare, social security benefits, housing, prison discipline, education, and the like which are now held every month— not to speak of hearings on recondite scientific or economic subjects.” Id. at 1284. In a passage that seemed to anticipate the Supreme Court’s decision in Walters, Judge Friendly observed that the problems associated with providing rights of counsel and confrontation in such cases “inevitably bring up the question whether we would not do better to abandon the adversary system in certain areas of mass justice, notably in the many ramifications of the welfare system.” Id. at 1289. In the system he proposed, a presiding official “would have the responsibility for developing all the pertinent facts and making a just decision.” The presiding official would assume an active role in the hearing: “[F]or example, he would examine the parties, might call his own experts if needed, request that certain types of evidence be presented, and, if necessary, aid the parties in acquiring that evidence.” Id. Judge Friendly added that the system he described, which he referred to as “investigatory,”
should not be viewed as a lessening of the protection to the individual; if properly applied, it could well result in more. This investigatory model would also have the advantage of being more informal; the decisionmaker, in a conference-type setting, would hear the evidence and discuss the dispute with the parties and with their attorneys, assuming that they were permitted to have them.... There is no constitutional mandate requiring use of the adversary process in administrative hearings unless the Court chooses to construct one out of the vague contours of the due process clause.
Id. at 1290-91. Judge Friendly’s model describes the veterans’ disability benefits system with remarkable accuracy. His analysis, like the subsequent analysis of the Supreme Court in Watters, shows why the procedures that are routinely employed in criminal and civil litigation, including rights to counsel and confrontation, are not constitutionally required components of an administrative benefits system, particularly one that is nonadversarial and pro-claimant in design and operation.
F
Another factor that supports the conclusion that due process does not require a right to serve interrogatories on medical experts has to do with the subject matter: medical judgments. On several occasions, the Supreme Court has addressed the question of how to apply due process in the context of medical decisions. The Court’s opinions, particularly its opinion in Par- *1322 ham v. J.R., 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), are instructive.
In Parham, the Court considered whether Georgia’s procedure for the voluntary commitment of mentally ill children violated due process. The Court paid special attention to the fact that when a State is forced to determine whether a child is sufficiently mentally ill to permit a parent or guardian to institutionalize the child, the State faces questions that are “essentially medical in character.” Id. at 609, 99 S.Ct. 2493. The Court recognized that “[n]ot every determination by state officers can be made most effectively by use of ‘the procedural tools of judicial or administrative decision making.’ ” Id. at 608, 99 S.Ct. 2493, quoting Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 90, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). In the context before it, the Court held that a formal or quasi-formal hearing was not required and that “due process is not violated by use of informal traditional medical investigative techniques.” 442 U.S. at 607, 99 S.Ct. 2493. In so concluding, the Court stated that “neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgments.” Id. Accordingly, the Court looked to the practical realities of how an “essentially medical” decision could be reached with a reduced rate of error. The Court explained:
The mode and procedure of medical diagnostic procedures is not the business of judges. What is best for a child is an individual medical decision that must be left to the judgment of physicians in each case. We do no more than emphasize that the decision should represent an independent judgment of what the child requires and that all sources of information that are traditionally relied on by physicians and behavioral specialists should be consulted.
Id. at 607-08, 99 S.Ct. 2493. Rejecting the notion that an adversarial procedure is necessary, the Court stated that with respect to decisions to commit the mentally ill, “Common human experience and scholarly opinions suggest that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions ... may well be more illusory than real.” Id. at 609, 99 S.Ct. 2493. The Court’s decision that a nonadversarial system is appropriate in the medical context involved in Parham v. J.R. thus rested on the judgment that the risk of error in a procedure involving decisions made by independent medical decisionmakers would not be “significantly reduced by a more formal, judicial-type hearing.” Id. at 613, 99 S.Ct. 2493.
Parham illustrates the point that when medical decisions are in issue, the benefits that may otherwise be associated with the adversarial system are frequently attenuated. In other cases as well, the Court has approved the use of nonadversarial administrative proceedings that have been implemented to deal with medical determinations. See Washington v. Harper, 494 U.S. 210, 233, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (decision whether to compel a prisoner to take anti-psychotic medicine does not require a judicial decisionmaker; because “the risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals,” a State may permissibly choose administrative review using medical decision-makers rather than a judicial hearing); Vitek v. Jones, 445 U.S. 480, 495, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (“essentially medical” decision whether to transfer a prisoner to a mental hospital for treatment does not require presence of counsel).
In the DVA’s system for determining whether particular disabilities are service-connected, the decision frequently turns on *1323 a medical judgment. In light of the nature of the inquiry in DVA disability proceedings, the Supreme Court has determined that the agency’s decision need not be made in a formal adversarial proceeding. As the Court stated, “It is less than crystal clear why lawyers must be available to identify possible errors in medical judgment.” Walters, 473 U.S. at 330, 105 S.Ct. 3180 (emphasis in original). For the same reasons, I do not regard confrontation, either through in-person cross-examination or interrogatories, to be an essential component of procedural fairness when the issue involves a request for a medical opinion from a VHA physician or an independent medical expert in the course of a veterans’ disability compensation hearing before the Board of Veterans’ Appeals.
G
As a final point, it is worth noting that Mr. Gambill relies heavily on cases from other courts of appeals dealing with due process challenges to the procedures employed in social security benefits cases. In several of those cases, the courts have held that due process requires that the claimants be allowed either the right of cross-examination or the right to serve interrogatories as a means of challenging post-hearing medical reports. See, e.g., Calvin v. Chater, 73 F.3d 87 (6th Cir.1996); Demenech v. Sec’y of Dep’t of Health & Human Servs., 913 F.2d 882 (11th Cir.1990); Lidy v. Sullivan, 911 F.2d 1075 (5th Cir. 1990); Solis v. Schweiker, 719 F.2d 301 (9th Cir.1983); Cowart v. Schweiker, 662 F.2d 731 (11th Cir.1981). Those cases can be factually distinguished from this one on the ground that each of them involved examination reports assessing the particular' claimant’s condition, not merely evidence as to a general medical principle, as in this case. With respect to the latter type of evidence, there is arguably less need for direct confrontation of the reporting physician.
More generally, while the veterans’ disability compensation system is similar to the social security disability system in some respects, the two systems differ in an important regard: As the Supreme Court pointed out in Richardson v. Perales, 402 U.S. 389, 408-09, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the statute that governs administrative proceedings in social security cases served as the model for section 7(c) of the Administrative Procedure Act, which provides that a party is entitled “to conduct such cross-examination as may be required for a full and true disclosure of the facts.” 5 U.S.C. § 556(d). See Wallace v. Bowen, 869 F.2d 187 (3d Cir.1989) (reliance on post-hearing reports without opportunity for cross-examination denied claimant his statutory right to a decision based on evidence adduced at the hearing). By contrast, Congress made clear at the time of the Veterans’ Judicial Review Act of 1988 that it did not want the provisions of section 7(c) of the Administrative Procedure Act to apply to veterans’ disability compensation proceedings. The explanatory statement by the House and Senate Committees about that Act stated that the Committees intended that the Board’s informal procedures “be continued and that the [Administrative Procedure Act] procedures relating to adjudications continue to be inapplicable.” Explanatory Statement, 134 Cong. Rec. 31477 (1988), reprinted in 1988 U.S.C.C.A.N. at 5843. The adjudicative process in the social security system is thus intended to be more formal than in the veterans’ disability compensation system, particularly with respect to the right of cross-examination. Accordingly, without regard to whether those social security cases were correctly decided, they do not dictate the outcome in this case, which involves a different type of evidence and a different statutory scheme.
sfc :¡í í¡;
*1324 In sum, the Supreme Court’s guidance in Walters and in the Parham line of cases leads me to conclude that due process does not require that veterans’ disability compensation claimants must be permitted to use interrogatories or other forms of confrontation to challenge medical expert opinion evidence. I would therefore affirm the decision of the Veterans Court on that ground.