Citation Nr: 1331591 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 11-29 343 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for hypertension, to include as secondary to the service-connected coronary artery disease and PTSD.

2. Entitlement to a compensable rating for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

Scott Shoreman, Counsel




INTRODUCTION

The Veteran had active service from June 1944 to February 1946 and from July 1951 to May 1971.

This matter comes before the Board of Veterans' Appeals (Board) from a July 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California.

This claim was previously before the Board in May 2013 at which time the Board remanded it for additional development. The requested development has been completed on the issue of entitlement to a compensable rating for bilateral hearing loss, and the claim is properly before the Board for appellate consideration.

The issue of whether new and material evidence has been submitted to reopen the previously denied claim of entitlement to service connection for tinnitus has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issue of entitlement to service connection for hypertension, to include as secondary to the service-connected coronary artery disease and posttraumatic stress disorder (PTSD), is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The Veteran's hearing manifested by no more than Level II hearing acuity in the right ear and Level III hearing acuity in the left ear.

2. The Veteran's functional impairment from bilateral hearing loss includes difficulty hearing conversations and hearing in crowds.


CONCLUSION OF LAW

The criteria for a compensable disability rating for bilateral hearing loss have not been met or approximated. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 3.321, 4.7, 4.85, 4.86, Diagnostic Code 6100 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). 

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

Here, the VCAA duty to notify was satisfied by way of letters sent to the Veteran in December 2009, April 2010 and May 2013 that fully addressed all notice elements. The case was re-adjudicated in August 2013, and no contention has been raised as to inadequate notice. 

Next, VA has a duty to assist a Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2013). The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains service treatment records, VA and private treatment records, as well as reports of VA examinations. Findings from the examination reports are adequate for the purposes of deciding the claims on appeal. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

Therefore, the Board concludes that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the Veteran's claim, and no further assistance to develop evidence is required.

II. Increased Ratings

Disability ratings are based upon VA's Schedule for Rating Disabilities as set forth in 38 C.F.R. Part 4 (2013). The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity in civil occupations. 38 U.S.C.A. § 1155 (2002). The disability must be viewed in relation to its history. 38 C.F.R. § 4.1 (2013). A higher evaluation shall be assigned where the disability picture more nearly approximates the criteria for the next higher evaluation. 38 C.F.R. § 4.7 (2013). 

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, consideration also must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In evaluating service-connected hearing loss, disability evaluations are derived from a mechanical application of the rating schedule to numeric designations assigned after audiometric evaluations are performed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). Evaluations of bilateral hearing loss range from noncompensable (0 percent) to 100 percent based on organic impairment of hearing acuity. Audiological examinations used to measure impairment must be conducted by a state-licensed audiologist and must include both a controlled speech discrimination test (Maryland CNC) and pure tone audiometric tests. 38 C.F.R. § 4.85(a). 

The Ratings Schedule provides a table for rating purposes (Table VI) to determine a Roman numeral designation (I for essential normal acuity through XI for profound deafness) for hearing impairment, based upon a combination of the percent of speech discrimination and the pure tone threshold average which is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. See 38 C.F.R. § 4.8, Diagnostic Code 6100. 

Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal row represents the ear having the poorer hearing and the vertical column represents the ear having the better hearing. Id. 

When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a) (2013).

When the pure tone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(b) (2013).

The Veteran wrote on his August 2009 claim that he had problems hearing in noisy environments. He had a VA examination in February 2010 at which pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
30
40
50
LEFT
20
25
30
45
60

Speech audiometry revealed speech recognition ability of 84 percent in the right ear and of 80 percent in the left ear. Tympanogram results were within normal limits bilaterally. The Veteran was diagnosed with mild to severe sensorineural hearing loss.

The Veteran had an examination arranged through VA QTC Services in August 2013. On the audiological evaluation, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
25
35
45
55
LEFT
25
25
35
45
60

Speech audiometry revealed speech recognition ability of 86 percent in the right ear and of 80 percent in the left ear. Acoustic immittance was normal bilaterally and ipsilateral acoustic reflexes and contralateral acoustic reflexes were abnormal bilaterally. The Veteran was diagnosed with sensorineural hearing loss. In regards to how employment was affected by hearing loss, the examiner felt that with appropriate amplification for hearing loss the Veteran could engage in physical and sedentary employment within a quiet environment.

Since the audiological findings do not show pure tone thresholds at 55 decibels or more at each of the four specified frequencies and does not show 70 decibels or more at 2000 Hertz with 30 decibels or less at 1000 Hertz, exceptional patterns of hearing loss are not shown and the Board will not determine the Roman numeral designation for hearing impairment from Table VIA. Only Table VI will be used. See 38 C.F.R. § 4.86.

When applying the pure tone averages and speech recognition scores from February 2010 to Table VI, the right ear is assigned a Level II and the left ear is assigned a Level III. When applying the pure tone averages and speech recognition scores from August 2013 to Table VI, the right ear is assigned a Level II and the left ear is assigned a Level III. The Board then applies those levels to Table VII, which results in a 0 percent, noncompensable evaluation for the Veteran's bilateral hearing loss.

The audiological examinations addressed the functional limitations related to hearing loss. Martinak v. Nicholson, 21 Vet. App. 447 (2007). The examiner in February 2010 noted that the Veteran had difficulty hearing conversation and difficulty hearing in crowds, and the August 2013 examiner noted that the Veteran's hearing was getting worse. See 38 C.F.R. § 4.8, Diagnostic Code 6100.
Nevertheless, a compensable disability rating for bilateral hearing loss is not warranted based on any audiological findings of record. 

The RO must refer a claim to the Chief Benefits Director or the Director, Compensation and Pension Service, for consideration of an extraschedular rating where a service-connected disability presents an exceptional or unusual disability picture with marked interference with employment or frequent periods of hospitalization that render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b) (1) (2013). An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Id. at 115-116. When those two elements are met, the appeal must be referred for consideration of the assignment of an extraschedular rating, otherwise, the schedular evaluation is adequate, and referral is not required. Id. at 116.

In making this determination, the Board is cognizant of the holding of Martinak, supra. In that decision, the United States Court of Appeals for Veterans Claims (Court) noted that, unlike the rating schedule for hearing loss, the extraschedular provisions did not rely exclusively on objective test results to determine whether referral for an extraschedular rating was warranted. The Court held that in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. Id. at 455.

In this case, the Board acknowledges the Veteran's decreased hearing acuity. The Board notes that the Veteran was noted to have difficulty hearing conversations and in noisy environments. These symptoms, however, are consistent with the assigned disability evaluation described above and are not "exceptional." Moreover, the Veteran has not asserted, and the Board has not found, any reason to doubt the accuracy of the audiological examinations. Therefore, Board finds that the Rating Schedule contemplates all aspects of his disability, so that referral for extraschedular consideration is not warranted.

In light of the holding in Hart, supra, the Board has considered whether the Veteran is entitled to "staged" ratings for his service-connected bilateral hearing loss, as the Court indicated can be done in this type of case. Based upon the record, we find that at no time during the claims period has the disability on appeal been more disabling than as currently rated under the present decision of the Board. 

Additionally, the Court has held that a request for total disability rating based on individual unemployability (TDIU), whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities, and is part of a claim for increased compensation. However, there must be cogent evidence of unemployability in the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009), citing Comer v. Peake, 552 F.3d 1362 (Fed. Cir. 2009). In the instant case, the August 2013 examiner did not feel that the bilateral hearing loss rendered the Veteran unemployable, and the record does not show otherwise. Therefore, the record does not reasonably raise a claim for a TDIU.

The preponderance of the evidence is against the claim. There is no doubt to be resolved, and a compensable rating for bilateral hearing loss is not warranted. See 38 C.F.R. § 5107(b); Gilbert, 1 Vet. App. at 54-56.


ORDER

A compensable evaluation for bilateral hearing loss is denied.


REMAND

A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order, and where the remand orders of the Board were not complied with the Board itself errs in failing to insure compliance; in such situations the Board must remand back to RO for further development. Stegall v. West, 11 Vet. App. 268 (1998).

In May 2013 the Board remanded the claim of entitlement to service connection for hypertension in order for the Veteran to undergo a VA examination, which occurred in July 2013. Unfortunately, the examiner did not provide an opinion regarding the possible relationship between the service-connected PTSD and hypertension. Rather, it appears only the relationship between hypertension and CAD was addressed. Therefore, the claim must be remanded in order for a new opinion to be obtained. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). Expedited handling is requested.)

1. Obtain an addendum to the VA examination report from July 2013. The claims file must be made available to, and reviewed by, the examiner, and the examination report should reflect that the claims file was reviewed.

The examiner is asked to provide an opinion as to whether it is at least as likely as not that the Veteran's hypertension was caused by or was increased in severity beyond its natural progression by the service-connected PTSD. If such aggravation is found, the examiner should provide the baseline manifestations of the Veteran's hypertension prior to aggravation and the increased manifestations, which, in the examiner's opinion, are proximately due to the service-connected PTSD.

2. Readjudicate the Veteran's claim. If the benefit sought on appeal are not granted in full, the RO should issue the Veteran and his representative a supplemental statement of the case and provide him an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).


______________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs