Citation Nr: 1607930 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 13-27 406 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah


THE ISSUES

1. Entitlement to service connection for headaches.

2. Entitlement to service connection for a heart disability, to include sinus bradycardia.

3. Entitlement to an initial rating higher than 10 percent for service-connected asthma.


REPRESENTATION

Appellant represented by: James M. McElfresh II, Agent


ATTORNEY FOR THE BOARD

J. Meawad, Counsel

INTRODUCTION

The Veteran served on active duty from July 2006 to November 2010.

This matter is before the Board of Veterans' Appeals (Board) on appeal of a March 2011 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO) in Salt Lake City, Utah.

In June 2015, the Board denied a claim of service connection for a cervical spine disability. At that time, the Board remanded the remaining claims for further development.


FINDINGS OF FACT

1. A heart disability, including sinus bradycardia, has not been shown during the pendency of the appeal.

2. A headache condition has not been shown during the pendency of the appeal.

3. The Veteran's asthma is not manifested by FEV-1 of 56 to 70 percent predicted, or FEV-1/FVC of 56 to 70 percent, nor does he require daily inhalational or oral bronchodilator therapy or inhalational anti-inflammatory medication.


CONCLUSION OF LAW

1. The criteria for entitlement to service connection for a heart disability, including sinus bradycardia, have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

2. The criteria for entitlement to service connection for headaches have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

3. The criteria for a disability rating in excess of 10 percent for asthma are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 4.97, Diagnostic Code 6602 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015).

Regarding the claim for asthma, the appeal arises from a disagreement with the initially assigned disability rating after service connection was granted. Once a decision awarding service connection, a disability rating, and an effective date has been made, section 5103(a) notice is no longer required because the claim has already been substantiated.

Regarding the remaining issues, a standard January 2011 letter satisfied the duty to notify provisions.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c).

The Veteran's service treatment records have been obtained. Post-service VA treatment records have also been obtained.

The Veteran was provided VA medical examinations in February 2011, May 2012, January 2014, and December 2015. The most recent one was provided pursuant to the Board's June 2015 remand. The examinations, along with the expert medical opinions, are sufficient evidence for deciding the claims. The reports are adequate as they are based upon consideration of the Veteran's prior medical history and examinations, describe the disability in sufficient detail so that the Board's evaluation is a fully informed one, and contain a reasoned explanation. Thus, VA's duty to assist has been met.

II. Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2015). "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

The Veteran's service treatment records and private records during his period of service show that he was treated for headaches and a headache condition was included in subsequent problem lists and was also treated for a single episode of sinus bradycardia in June 2009. However, the preponderance of the evidence shows that the Veteran has not been diagnosed as having a headache condition or a heart disability, including sinus bradycardia, at any time following service. During service in February 2007, it was noted that the headache syndrome had resolved and the heart was found to be normal following the June 2009 treatment. Following service, all post-service treatment records are silent for any such diagnoses. In a February 2011 VA examination, a history of severe headaches and sinus bradycardia during service was noted; however, the examiner found that the Veteran's heart was normal on examination and his chronic headaches had resolved. The examiner further stated regarding the headaches that the normal examination and the Veteran's history was insufficient to warrant any chronic pathological disorder at that time. During a December 2015 VA examination, a history of tension headaches and sinus bradycardia was noted. The Veteran denied having any headaches in a long time and had no complaint of any ongoing headache disability since discharge, nor has he been treated for a headache condition since service. The Veteran was diagnosed as having tension headaches that were resolved. The examiner also noted that the Veteran had a cardiac arrhythmia, sinus bradycardia, in the remote past with no documentation of an ongoing condition since discharge from military and no other heart condition found. Physical examination revealed a regular heart rhythm. The examiner found that there was no present cardiac diagnosis to support a claim for a cardiac condition or an ongoing bradycardia cardiac condition.

A current disability is required in order to establish service connection. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). The evidence does not show that the Veteran has had a headache condition or heart disability at any time from when he first filed his claim for service connection. McClain v. Nicholson, 21 Vet. App. 319 (2007). Moreover, although there is evidence of possible remote conditions (e.g., in-service headaches and sinus bradycardia), the Board does not find such evidence sufficient to establish the existence of a current disability. See Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). The in-service "diagnoses" or notations are not sufficiently proximate to the filing of the claim, particularly in light of the substantial evidence created during the course of the claim that shows that these two claimed disabilities do not exist and that any prior remote instances had resolved during service.

In the absence of sufficient evidence of a current disability, the preponderance of evidence is against the claim of service connection headaches and a heart disability; there is no doubt to be resolved; and service connection is not warranted. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015).

III. Increased Rating

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C.A. § 1155 (West 2014). Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1 (2015).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2015). 

The Veteran's asthma has been rated as 10 percent disabling pursuant to 38 C.F.R. § 4.97, Diagnostic Code 6602 (2015), for bronchial asthma. Under Diagnostic Code 6602, a 10 percent evaluation is warranted when the forced expiratory volume in one second (FEV-1) is 71 to 80 percent predicted, or; the FEV-1/forced vital capacity (FVC) is 71 to 80 percent, or; intermittent inhalational or oral bronchodilator therapy is required. A 30 percent evaluation is warranted when the FEV-1 is 56 to 70 percent predicted, or; the FEV-1/FVC is 56 to 70 percent, or; daily inhalational or oral bronchodilator therapy is required, or; inhalational anti-inflammatory medication is required. A 60 percent evaluation is warranted when FEV-1 is 40-55 percent predicted; or, FEV-1/FVC is 40-55 percent; or, at least monthly visits to a physician for required care of exacerbations; or, intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. A 100 percent rating is warranted when FEV-1 is less than 40 percent predicted, or; FEV-1/FVC is less than 40 percent, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications. 

Service treatment records reflect that exercise induced asthma was diagnosed in 2010. In May 2010, a medical provider noted that the Veteran was not limited in exercise and was able to pass physical training tests without difficulty. The Veteran was medically discharged on the basis of his asthma.

On VA examination in February 2011, the Veteran endorsed dyspnea on exertion if he exercised without his inhaler. He related that he used his inhaler prior to exercise. The examiner indicated that cardiopulmonary exercise test in January 2010 revealed a 14 percent decrease in his FEV1, reversible with bronchodilators. The examiner noted that pulmonary function tests in May 2010 were normal, and that an exercise pulmonary function test (PFT) was required to elicit any abnormality. 

On VA examination in May 2012, the examiner indicated that the Veteran's asthma did not require the use of oral or parenteral corticosteroid medication, or antibiotics. He noted that the Veteran used inhalational anti-inflammatory medication and oral bronchodilators on an intermittent basis. The examiner noted that exercise capacity testing had not been performed. 

June 2012 PFTs revealed FVC of 95 percent predicted, FEV-1 of 97 percent predicted, and FEV-1/FVC of 91 percent predicted. It was indicated that the FEV-1/FVC test most accurately reflected the Veteran's current pulmonary function.

In the August 2013 substantive appeal, the Veteran's representative argued that the Veteran used a bronchodilator daily.

Another VA examination was afforded to the Veteran in January 2014 for his diagnosed asthma. The examiner noted that the Veteran used inhalational bronchodilator therapy on an intermittent basis and oral or parenteral corticosteroid medications, oral bronchodilators and antibiotics were not used. PFTs revealed FVC of 105.2 percent predicted, FEV-1 of 105 percent predicted, and FEV-1/FVC of 100 percent predicted. The examiner noted that per the Veteran's report, he had exercise induced asthma and found that without exercise, the bronchospasm characteristic of asthma would not show up on the pulmonary function test. 

In a December 2015 VA examination, the examiner stated that the Veteran's respiratory condition did not require oral or parenteral corticosteroid medications, use of inhaled medications, use of oral bronchodilators, use of antibiotics, or outpatient oxygen therapy. PFT testing showed that prebronchodilator results were normal. October 2015 PFTs revealed FVC of 102 percent predicted, FEV-1 of 98 percent predicted, and FEV-1/FVC of 96 percent predicted. 

Based on the medical evidence of record, the Board finds that the preponderance of the evidence does not show that a rating higher than 10 percent is warranted. Results of PFT performed during the appellate period do not show FEV-1 is 56 to 70 percent predicted, or; the FEV-1/FVC is 56 to 70 percent. At worst, the Veteran had PFT results of FVC of 95 percent predicted, FEV-1 of 97 percent predicted, and FEV-1/FVC of 91 percent predicted during the June 2012 VA examination. These levels of PFT results are contemplated by the already assigned 10 percent rating. Additionally, the record shows that the Veteran's asthma requires inhalational bronchodilator therapy at most on an intermittent basis. Although the Veteran's representative stated that he used a bronchodilator daily, this was not medically documented nor did the Veteran report daily use during any of the VA examinations, which clearly note that he did not use inhalational bronchodilator therapy more than intermittently. The Board finds those examinations and the Veteran's reports to examiners and treatment providers to be more persuasive.

In sum, the preponderance of the evidence is against a rating higher than 10 percent for asthma. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. The Board finds that the Veteran's credible belief that his disabilities are worse than the assigned disability ratings is outweighed by the competent and credible medical examinations that evaluated the true extent of impairment based on objective data coupled with the lay complaints. The treating physicians and the VA examiners have the training and expertise necessary to administer the appropriate tests for a determination of the type and degree of the impairment associated with the Veteran's complaints. For these reasons, greater evidentiary weight is placed on the physical examination findings than the Veteran's lay statements with respect to the extent to which the Veteran is entitled to a higher rating.

The Board has considered whether the Veteran's claim warrants referral for consideration of an extraschedular rating. An extraschedular rating is warranted under 38 C.F.R. § 3.321(b)(1) (2015) if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 

The Board finds that the claimant's disability picture is adequately contemplated by the rating schedule. The Veteran has not claimed nor does the evidence show that his service-connected asthma caused marked interference with his employment or required hospitalization. The Veteran's service-connected asthma is primarily manifested by shortness of breath on exertion. These signs and symptoms, and their resulting impairment, are contemplated by the rating schedule. Diagnostic Code 6602, which rates asthma, provides disability ratings on the basis of pulmonary function and use of medication or inhalational or oral bronchodilator therapy. 38 C.F.R. § 4.97. 

In summary, as the Veteran's disability picture is contemplated by the rating schedule, the schedular criteria are adequate and referral for consideration of an extraschedular rating is not necessary. See Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1). Furthermore, the disability picture is not so exceptional to warrant referral even when the disabilities are considered in the aggregate. 

Total Disability Rating Due To Individual Unemployability (TDIU)

A request for a TDIU, whether expressly raised by a claimant or reasonably raised by the record, is an attempt to obtain an appropriate rating for disability or disabilities, and is part of a claim for increased compensation. There must be cogent evidence of unemployability in the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009) (citing Comer v. Peake, 552 F.3d 1362 (Fed. Cir. 2009)). In the instant case, the holding of Rice is inapplicable since the evidence of record clearly shows that the Veteran is employed; thus, there is no cogent evidence of unemployability caused by his service-connected disabilities and further consideration of entitlement to increased compensation based on TDIU is not necessary.



ORDER

Service connection for headaches is denied.

Service connection for a heart disability, to include sinus bradycardia, is denied.

An initial rating higher than 10 percent for service-connected asthma is denied.




____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs