﻿Citation Nr: 19142242
Decision Date: 05/31/19 Archive Date: 05/31/19

DOCKET NO. 19-03 802
DATE: May 31, 2019

ORDER

Entitlement to an effective date earlier than July 18, 2014 for the grant of service connection for right-elbow ulnar nerve disorder is denied.

Entitlement to an effective date earlier than February 12, 2015 for the grant of service connection for right-elbow supination and pronation is denied. 

FINDINGS OF FACT

1. The objective medical evidence shows right-elbow ulnar disorder was not identified earlier than July 18, 2014, as the date entitlement arose. The claim for service connection for neurological impairment was received in February 2015, and entitlement was shown within 1 year of that date.

2. The evidence of record shows the claim for service connection for right-elbow supination and pronation had been final and closed, with reopening and service connection later granted as of the date of the reopened claim February 12, 2015.

3. Service connection has been separately granted for right elbow flexion contracture with pain on movement, fatigue, and weakness from March 2004.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than July 18, 2014 for the grant of service connection for right-elbow ulnar nerve disorder have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).

2. The criteria for an effective date earlier than February 12, 2015 for the grant of service connection for right-elbow supination and pronation have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active military service from July 1964 to July 1967. He was awarded a Purple Heart Medal among his awards and decorations.

Effective Date

The effective date of an award of compensation benefits that is based on an original claim will be the date the claim was received, or the date entitlement arose, whichever is later. See 38 U.S.C. § 5110; 38 C.F.R. § 3.400. The date of entitlement is the date the claimant meets the basic eligibility criteria for the benefit. However, for original claims for service connection received within one year after separation from service, the effective date can be the day following separation from active service. 38 C.F.R. § 3.400 (b)(2)(i). Where final claims are reopened with new and material evidence the effective date is the date of the claim of the date the entitlement arose, unless the new and material evidence are previously unreceived service treatment records. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

 

1. Entitlement to an effective date earlier than July 18, 2014 for the grant of service connection for right-elbow ulnar nerve disorder.

2. Entitlement to an effective date earlier than February 12, 2015 for the grant of service connection for right-elbow supination and pronation.

Service connection for these two disorders was originally granted by rating action of December 2015, with an effective date for each as of July 2015. In granting an earlier effective date of July 18, 2014 for service connection for right-elbow ulnar nerve disorder, the January 2019 rating decision stated this was considered a full grant of the benefits sought on appeal for this issue, as that had been initially indicated by the Veteran. An earlier effective date of February 12, 2015 was also granted for right-elbow supination and pronation. However, the rating decision noted that since the earlier date granted was not for the entire period requested, the issue remains on appeal. Nonetheless, the Veteran and his attorney have since unequivocally asserted in the letter or brief accompanying his January 2019 VA Appeals Form 9 that he is continuing to seek entitlement to earlier effective dates for both claims.

Record

On his behalf, the Veteran’s representative asserts in the January 2019 brief that the Agency of Original Jurisdiction (AOJ) committed an error in not issuing a Statement of the Case (SOC) in response to the Veteran’s November 1982 submission, which the representative further asserts was a Notice of Disagreement (NOD), and therefore VA failed to acknowledge the Veteran’s initiation of an appeal to the Board. From this, the representative contends that the appeal has been pending since a December 1981 submission, which the representative also contends is when the Veteran first filed a claim for “his right elbow,” and therefore no decision has yet become final and the appeal has never been closed. 

A February 1968 rating decision found there was no evidence of or treatment for a “right-elbow condition” during service. He was notified of that decision in March 1969. In a November 1968 notice, “right-elbow condition” was again denied service connection. There was no appeal from that action. 

The Veteran’s above-mentioned December 1981 statement addresses what he describes as a definite contraction of the right elbow (at 40 to 50 degrees), making it difficult to lift anything. However, he adds x-rays revealed no bone or joint injury, but his physician suspected some form of muscle/tendon/ligament problem because of the contraction. As a point of clarification, the Board at this point notes that the Veteran has a service-connected claim for right-elbow flexion contracture. That claim is not before the Board on this appeal.

Following the December 1981 submission, a June 1982 rating decision stated no new and material evidence had been submitted which would warrant service connection for “a right-elbow condition, previously denied.” In November 1982, the Veteran submitted correspondence, stating the combat injury to his leg had caused him to fall and injure his right elbow, but it was not broken and it received no treatment at the time. A March 1983 rating decision found no “material evidence” had been presented to warrant service connection for “right-elbow condition,” which had been previously denied. He was notified of this decision and provided with information concerning his appellate rights. No timely disagreement or appeal is of record.

In addressing the representative’s arguments in relation to the record as summarized above, as already stated, the representative asserts that, with the December 1981 statement, the Veteran “first filed a claim for service connection for his right elbow condition.” The Board does not agree. The February 1968 rating decision specifically stated the “original claim” was filed in July 1967. Based on the claim issues addressed in the February 1968 rating decision, the claim for a “right-elbow condition” was included. In the Veteran’s May 1968 Statement in Support of Claim, he states that April 1968 VA x-ray reports showed “a chipped bone in my right elbow,” incurred with his other combat injuries. The November 1968 rating decision notice again denied service connection, after which the Veteran received notification of the decision later in November, he did not initiate an appeal within one year of notification and the decision became final. At this point the appeal for service connection for service connection for “right-elbow condition” was now closed. 

Although the Veteran’s representative states the right-elbow claim “was denied” in the June 1982 rating decision which followed, the Board notes that he has failed to include the decision’s finding in full, “no new and material evidence has been submitted which would warrant service connection for a right-elbow condition, previously denied,” clearly referring to the November 1968 denial of the claim. From this, the Board concludes that the Veteran’s December 1981 statement was in fact a submission of evidence, which the Veteran hoped to show as new and material in order to reopen the claim.

The Veteran then submitted the November 1982 correspondence statement, stating in part:

Concerning your rejection of my claim for service connection for my present right-elbow condition, please note the medical information requested above should substantiate my claim. My present condition has deteriorated. 

He added that if his present physical therapy is unsuccessful he will undergo an operation on the right arm/elbow. He stated that recent VA x-rays revealed right-elbow joint damage. The “medical information” to which the Veteran refers concerns treatment in Da Nang, Vietnam, during which his leg and wrist were treated, but the right elbow, reported by the Veteran as being injured when he fell with the wound to his leg, received no treatment because it had not been broken. More pertinently, the above statement by the Veteran states, first, his “condition has deteriorated” and, second, recent VA x-rays showed right-elbow joint damage. 

At this point, the Board’s understanding of the record differs with that of the representative. He argues that the November 1982 statement is an NOD, as it implicitly expresses dissatisfaction or disagreement with the June 1982 rating decision denying the claim. Moreover, the Veteran’s representative challenges the January 2019 rating decision’s statement that the November 1982 statement was properly construed as a “new claim.” As it is, the Board finds no reasonable basis on which to characterize the November 1982 statement either as a “new claim” or as an “NOD” in light of the context just set forth, in which the June 1982 rating decision had denied the claim based on the absence of new and material evidence to reopen. See Stokes v. Derwinski, 1 Vet. App. 201, 203 (1991) (consideration should be given not only to the actual wording of the communication, but also to the context in which the communication was written). From this, the Board concludes that the November 1982 statement was, in effect, another submission by the Veteran to direct attention to new and material evidence which would reopen the claim. There was rating action taken on that application, and no appeal from that denial was taken.

As stated, following upon this, a March 1983 rating decision found no “material evidence” had been presented to warrant service connection for “right-elbow condition,” which had been previously denied. However, the Veteran’s representative contends rather that this decision is in fact “an error,” as an “NOD” had been received, VA did not “acknowledge and establish the appeal,” the appeal therefore had been pending since the “[December] 1981 claim,” and “VA must establish the effective date of such.”

Once again, the Board must express disagreement, the basis of which is borne out in the overall context of the appeal stream, as the March 1983 rating decision is yet another rating decision which speaks to “material evidence” being presented to warrant service connection for “right-elbow condition,” which had been previously denied. The issuance of the March 1983 rating decision is not an “error,” but the logical end-point in the submission of evidence and its evaluation as new and sufficiently material, as it relates to an unestablished fact necessary to substantiate the claim. For the reasons stated, the Board does not find the representative’s arguments persuasive. No appeal to the Board was initiated until the submission of the December 2015 NOD. 

It is also noted, in the processing of various claims over the years that service connection was in fact established for right elbow flexion contracture, with pain on movement, fatigue, and weakness with a 10 percent rating from March 23, 2004. No appeal was taken from that action. There is no appeal as to this rating or effective date before the Board as part of this appeal.

What have been taken as reopened claims for service connection or increased ratings for right elbow impairment were received as of February 12. 2015. 

As it is, a December 2015 rating decision granted service connection for the two right-elbow claims now on appeal, stating “[s]ervice connection for traumatic ulnar nerve injury, right elbow has been established as related to the service-connected disability of right elbow flexion contracture with pain on movement, fatigue and weakness (emphasis added).” The initial effective date was said to be in July 2015.

The rating decision further stated, “[s]ervice connection for impairment of supination and pronation, right elbow (claimed as right elbow condition) has been established as directly related to military service,” with a 20 percent evaluation assigned from July 8, 2015, the date of the above claim application. 

By subsequent April 2019 rating it was noted that a document in February 2015 could be taken as the reopened claim. The ulnar nerve pathology was reported to have been first demonstrated on July 18, 2014 medical documents, and the date of the claim for the supination and pronation impairment was first shown after the February 2015 date of claim.

The Board at this point notes that, given these findings, as a matter of law, no other effective date was available. An effective date for a reopened claim of entitlement to service connection can be no earlier than the date the request to reopen the claim was filed. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400 (r). See also Comer v. Peake, 552 F.3d 1362, 1370 (Fed. Cir. 2009) (“The earliest effective date for an award based on a veteran’s request to reopen a final decision based on new and material evidence is generally the date that the application to reopen was filed”).

Based on this further summary of the record, it is clear that the Veteran and his previous representative understood the right-elbow claim for service connection, which became “right-elbow disorder (supination and pronation),” to have been closed until reopened in July 2015. As already stated, the Board does not accept the current representative’s arguments as convincing, or in fact valid, to be a basis on which to disturb a reasonable understanding of the record as summarized. Moreover, service connection for some right elbow impairment had been in effect since 2004.

Additionally, the December 2015 rating decision has stated the Veteran’s claim for service connection for right-elbow ulnar nerve disorder to be “as related to” the service-connected disability of right elbow flexion contracture. For the reasons discussed below, the ulnar nerve disorder was not clinically identified until July 2014 and the representative’s arguments are therefore inapplicable to that claim.

As it is, the Board need not consider further the issue of new and material evidence, as the December 2015 rating decision granted service connection for these claims. Ultimately, the January 2019 rating decision granted the earlier effective date of July 18, 2014 for right elbow-ulnar nerve disorder, based on electromyograph findings, and the earlier effective date of February 12, 2015 for right-elbow supination and pronation, the date of the Veteran’s correspondence statement, in which he asserts right-elbow limitation of supination. 

Right-elbow Ulnar Nerve Disorder 

The treatment record does not offer medical evidence that right-elbow ulnar nerve disorder manifested before July 18, 2014. For example, December 1981 and March 1982 VA treatment notes detected right-elbow pain on movement during examinations. A January 1983 VA examination shows x-rays findings for right-elbow joints within normal limits. A September 2000 VA addendum to a treatment note showed after neurological examination decreased muscle strength in the interosseous muscles of the right fourth and fifth fingers, with only slightly decreased sensation in the ulnar nerve distribution area. The Veteran was assessed with slight weakness and decreased sensation in the ulnar nerve distribution, probably due to nerve injury due to trauma. but with no definitive diagnosis of an ulnar nerve disorder or injury. October 2000 VA x-rays revealed no acute findings.

June 2006 VA private treatment x-rays revealed no evidence of acute fracture or dislocation of the right elbow. In March 2007, the Veteran presented for a VA examination for joints. On physical examination, ulnar wrist deviation (range of motion testing to determine wrist mobility) was 0 to 70 degrees, with pain. June and August 2009 VA occupational therapy notes show ulnar deviation testing indicated 0 to 10, less than normal, but with no assessment or diagnosis to that effect.

March 2010 x-rays of the right elbow revealed mild degenerative joint disease of the elbow joint, with no evidence of acute fracture or dislocation. (As noted, at this point some right elbow impairment was considered service connected.) Additionally, they showed ossific density noted in the medial aspect of the right elbow, possibly indicating sequela prior trauma versus accessory ossicle. An April 2010 VA orthopedic outpatient notes shows in a cursory general examination sensation was intact to light touch in right-upper extremity axillary, radial, median, and ulnar nerve distributions.

However, electromyogram (EMG) findings from July 18, 2014 showed in relevant part electrophysiologic evidence of a polyneuropathy of “right upper extremities.” This EMG was in turn reviewed in the November 2015 VA examination for peripheral nerves, providing the basis on which the December 2015 rating decision granted service connection and the January 2019 rating decision later granted as an earlier effective date the date of the EMG findings.

The foregoing summary of the treatment record shows no medical evidence establishing by diagnosis a right-elbow ulnar nerve disorder earlier than the July 18, 2014 EMG findings, the date of which the AOJ assigned as the date entitlement arose. As already stated, as a matter of law, no earlier date is available. 

For these reasons and based on the objective medical evidence, the Board finds signs and symptoms of right-elbow ulnar disorder were not identified earlier than July 18, 2014, as the date entitlement arose. Consequently, no earlier effective date for service-connected right-elbow ulnar nerve disorder is possible. 

Right-elbow Supination and Pronation

A January 1983 VA examination shows both pronation and supination at 80 degrees (90 normal). X-rays showed right-elbow joints within normal limits. October 2000 VA x-rays revealed no acute findings. An April 2004 VA general medicine note recorded supination reduced to 70 degrees (90 normal).

June 2006 VA private treatment x-rays revealed no evidence of acute fracture or dislocation of the right elbow. A June 2006 private treatment orthopedic specialist found on examination that supination and pronation were full bilaterally. In March 2007, the Veteran presented for a VA examination for joints. On physical examination, forearm supination and pronation were at 80 degrees (90 normal), with no pain. The Veteran was diagnosed with chronic right-elbow pain syndrome. November 2007 private hand therapy notes show forearm supination at 70 degrees and forearm pronation at 70 degrees. The Veteran’s private treatment orthopedic specialist in November 2007 found supination and pronation were “80 [percent] of normal,” followed by December 2007 and March 2008 examinations finding “supination and pronation are essentially full.” (Again, at this point, separate service connection had been recognized for a flexion contracture of the right elbow.)

June and August 2009 VA occupational therapy notes show supination in active range of motion from 0 to 90 (normal) and pronation for 0 to 75. In July 2010, the Veteran underwent a private treatment examination, in which he was diagnosed with right-distal biceps tendinopathy. Findings included supination and pronation were 80 degrees and 80 degrees. July 2010 private hand therapy notes show forearm supination at 85 degrees and pronation at 85 degrees. 

As already stated, an effective date for a reopened claim of entitlement to service connection can be no earlier than the date the request to reopen the claim was filed. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400 (r). The date originally assigned for this claim in the December 2015 rating decision was July 8, 2015, the dated of the Veteran’s claim application seeking to reopen the claim. The January 2019 rating decision has since granted an even earlier effective date. As this claim had been final and closed, with reopening and service connection later granted, there is no basis in law for the Board to assign an earlier effective date. 

The Board has considered the benefit-of-the-doubt doctrine; however, the Board does not perceive an approximate balance of positive and negative evidence. The preponderance of the evidence is against the claims, the doctrine is not applicable and the claims must be denied. 38 U.S.C. § 5107 (b); 38 C.F.R. § 4.3.

 

MICHAEL D. LYON

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD P. Franke, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.